Hocks, Respondent, vs. Sprangers, Appellant.

*October 19, 1901—February 18, 1902.*

*Slander: Pleading: Ambiguity: Demurrer* ore tenus: *Evidence: Con-
ditional privilege: Improper remarks of counsel: Motion in na-
ture of motion for rehearing, when may be made: Excess in
money judgment: Correction on appeal without new trial: Mo-
tion: Delay attributable to court: Death of party: Judgment*
nunc pro tunc.

1. Where in the complaint in an action for slander the translation
of alleged defamatory words was ambiguous but the objection
was raised for the first time by a demurrer *ore tenus* inter-
posed after two witnesses, including defendant, had been ex-
amined, whose testimony, as well as the allegations of the an-
swer, tended to remove the ambiguity, the objection was prop-
erly overruled.   Under such circumstances the pleading should
be deemed to be amended so as to conform to the facts, or the
defect should be disregarded.

2. In an action for slander in stating that plaintiff, an unmarried
woman, was pregnant, evidence of statements of defendant in
regard to plaintiff's chastity, other than those upon which the
action is based, are admissible upon the question of malice.

3. Communications between members of the same Catholic church relating to the chastity of the priest's housekeeper, an unmarried woman, are not conditionally privileged, as against her.

4. The facts that the defendant in an action for slander permitted judgment to be taken against him by default, and that the default was subsequently opened and the defendant permitted to answer, have no bearing upon the issues raised by the pleadings. Persistent references to such facts by plaintiff's attorney in his argument to the jury, after the trial court had repeatedly ruled that they were improper, and persistence in a series of irrelevant questions, some of which related to the default, and to some of which he obtained answers well calculated to arouse the prejudice and passions of the jury against the defendant, are *held* so prejudicial to defendant as to require reversal of a judgment in plaintiff's favor.

*On motion:* Syllabus by MARSHALL, J.:

5. Supreme Court Rule XX, in regard to the time within which a motion for a rehearing must be made and submitted and the manner thereof, relates to a motion for a rehearing strictly so called,—a motion for a reconsideration of matters appearing in the record, covered by or which might or ought to have been covered by the previous hearing, not to a motion to change the judgment here rendered for some other cause, ordinarily made at the bar of the court. A motion of that kind is called "a motion in the nature of a motion for a rehearing," and it may be made and submitted at any time after judgment while the court is in possession of the record pursuant to sec. 3071, Stats. 1898.

6. The rule that, upon reversing a money judgment in this court, where there is no question as to the right of the losing party here to recover, and the only error found in the record calling for a reversal is that the judgment, for some reason, is too large, the court may name a sum which in its judgment will cure the error and allow the respondent to have judgment for that sum and thereby end the litigation, is not confined to cases where the amount to which the respondent is entitled can be ascertained to a mathematical certainty by computation, but applies to all cases where the circumstances requisite to the application of the rule exist.

7. The circumstances referred to in the foregoing paragraph are: First, a clear right to recover judgment for money damages; second, no error found in the record requiring correction except

as to the amount of the recovery appealed from; third, a situation where the amount to which the respondent is entitled is sufficiently clear that the court can name a sum for which he may take judgment which, to a reasonable certainty, will be as low as any that could probably be expected to result from a new trial.

8. Where all the circumstances, as before indicated, clearly appear, there is no reason why the error which made the appeal proper or necessary should not be so cured and the controversy put forever at rest without a new trial. No application by counsel for the losing party on the appeal is necessary to set such rule in motion. The court may and ought, in furtherance of justice, to apply the rule on its own motion, granting a new trial and imposing upon parties the vexation and expense of further litigation only when such a course is necessary. Sec. 3071, Stats. 1898.

9. Where a judgment for plaintiff in an action for slander is reversed solely because of improper prejudicial remarks of his counsel to the jury, which may probably have resulted in a larger verdict than otherwise would have been rendered, the rule above stated should be applied, and a new trial prevented if plaintiff will consent thereto.

10. Where, after a cause has been submitted for decision, one of the parties to the litigation dies, and the delay during which death occurred is attributable directly or indirectly to the court, it may render judgment as of the time when both parties were alive, and that rule applies to a cause of action which does not survive as well as one that does.

11. It is requisite to the application of the rule last stated that, at the time of the death of the party, the cause was in such a situation that judgment might have been rendered without any further trial or proceeding in the nature thereof, and that the delay during which death occurred was in some way attributable to the law as administered by the court.

12. Where, upon the reversal of a cause for no other reason than that the verdict of the jury was too large, and according to the practice of the court the losing party should be permitted to take judgment for such sum as, in its judgment, will cure the error, and the court omits to provide therefor, and one of the parties dies while the court yet has possession of the cause, it may, while its jurisdiction continues, cure such omission and permit judgment to be taken as it might have done, as of the time when both parties were living.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, JR., Circuit Judge. *Reversed.*

For the appellant there was a brief by *G. H. Dawson* and *Lyman E. Barnes,* and oral argument by *Mr. Barnes.* To the point that defendant's communications to his fellow church members were conditionally privileged, they cited 13 Am. & Eng. Ency. of Law (1st ed.), 403–405, and notes;. Id. 410, 411, 423; 18 Am. & Eng. Ency. of Law (2d ed.), 1029, 1032; *Moore v. Manufacturers' Nat. Bank,* 123 N. Y. 420, 426; Townshend, Slander & Libel (3d ed.), §§ 209, 241; *Trebby v. Transcript P. Co.* 74 Minn. 83, 73 Am. St. Rep. 330, 332; *Buckstaff v. Hicks,* 94 Wis. 34; *Landis v. Campbell,* 79 Mo. 433, 49 Am. Rep. 239; *Bearce v. Bass,* 88 Me. 521, 51 Am. St. Rep. 446; *Conroy v. Pittsburgh Times,* 139 Pa. St. 334, 23 Am. St. Rep. 188, 189; *Lewis v. Chipman,* 16 N. Y. 369, 373–375; *Missouri Pacific R. Co. v. Richmond,* 4 L. R. A. 280, and note; *Pollasky v. Minchener,* 81 Mich. 280, 21 Am. St. Rep. 516, 518; *Bacon v. M. C. R. Co.* 66 Mich. 166; *Garn v. Lockard,* 108 Mich. 196; *Livingston v. Bradford,* 115 Mich. 140; *Rothholz v. Dunkle,* 53 N. J. Law, 438, 26 Am. St. Rep. 432; *Servatius v. Pichel,* 34 Wis. 292, 297; *White v. Nicholls,* 3 How. 266, 286, 287; *Redgate v. Roush,* 48 L. R. A. 236, 238; *Shurtleff v. Stevens,* 51 Vt. 501, 31 Am. Rep. 698; *Bradley v. Heath,* 12 Pick. 163, 22 Am. Dec. 418–420; *Noonan v. Orton,* 32 Wis. 106, 112; *Rude v. Nass,* 79 Wis. 321, 328, *et seq.; Byam v. Collins,* 111 N. Y. 143, 150, 151.

For the respondent there was a brief by *Wigman, Martin & Martin,* and oral argument by *P. H. Martin.*

The following opinion was filed November 29, 1901:

CASSODAY, C. J. This is an action for slander, commenced April 20, 1900. The complaint states four separate causes of action, and each alleges, in effect, that the plaintiff was and always has been a single female, of pure and chaste

life, and had been in the employ of Rev. C. Delouw, a Roman Catholic priest, as housekeeper, at the town of Holland, in Brown county, for sixteen years then last past, and that the defendant, maliciously intending to injure the plaintiff in her good name, fame, and credit, and to bring her into public scandal, infamy, and disgrace with and among her neighbors and the public, and to cause it to be believed by them that she had been guilty of unchaste, lewd, and lascivious conduct, and of improper intimacy with one Rev. Van den Elzen, did falsely and maliciously speak of and concerning the plaintiff, in the presence and hearing, and at the places and at the times, respectively, therein mentioned, the false, scandalous, and defamatory words (omitting innuendoes) : (1) "*Miss Delia Hocks* is pregnant and is soon to become a mother, and that young fellow [Rev. Van den Elzen] is the father." To Daniel R. Curtin, at the town of Holland, February 23, 1900. (2) "She is knocked up, and does not want us to see her. The priest's nephew [Rev. Van den Elzen] is the father of the child." To Daniel R. Curtin, at the town of Holland, March 29, 1900. (3) "Father Delouw does not want us to see the housekeeper ·[plaintiff]. She is in the family way." To Joseph Wolfinger, at the city of Kaukauna, March 1, 1900. (4) "Have you heard the news from Hollandtown? The servant [plaintiff] goes to Freedom, because there is something loose. She is burnt. The servant is over the half when she was sick. I lay the fault on the young priest." To Martin Verkuylen, at Forest Junction, March 2, 1900.

The defendant, in answer to each of said four causes of action, admitted that the plaintiff is and always has been unmarried, and had been for several years then last past housekeeper for Rev. C. Delouw, a Catholic priest, at the town of Holland, and alleges, in effect, that at each of the dates mentioned the plaintiff was pregnant of a bastard child; that for twenty years then last past the defendant had been a farmer,

residing in that town, and a member of the church mentioned, and a regular attendant and a liberal giver to the support· and advancement thereof, and a firm believer in the faith, and sincerely desirous of promoting the welfare thereof; that his wife and eleven children all resided at his home, and were members and regular attendants at the church; that the priest's household consisted of the plaintiff, a younger girl as assistant, and the priest's nephew, Rev. Van den Elzen, mentioned in the complaint, who was at the time a Catholic priest; that at the several dates named the church edifice was being rebuilt, and a large number of workmen were constantly employed thereon, some of whom were frequently at the house of the priest; that at about the times alleged he had a confidential conversation with Daniel R. Curtin, Joseph Wolfinger, and Martin Verkuylen, respectively, mentioned in the complaint, and members of the building committee, and prominent members and regular attendants at the church, as to what he had heard from another member of the church··as to something wrong going on at the priest's house concerning the plaintiff, which was liable to injure the church, and was disagreeable to the members thereof, and especially shocking to the defendant's wife and daughters; that he and Curtin were vitally interested in the unfortunate event, and had the conversation with the view, if practicable, to formulate some plan for the prevention of a church scandal and the eradication of the further cause thereof; that at and prior to the time of such conversation the matters were of common rumor and report among the members of the congregation, and that the defendant had reasonable cause to believe, and did believe, that such rumors and reports were true, and that at the times of such conversations the defendant was informed and verily believed that the plaintiff was guilty of fornication and was then pregnant of a bastard child; and that whatever he said of or concerning the plaintiff was said in the full belief of its truth and verity, and in

good faith, in the interest and for the benefit of his family and church and the members thereof, and not from any motive of malice toward the plaintiff.

The answer also alleges as mitigating circumstances, and by way of mitigation of any damages the plaintiff may be entitled to, all the facts and matters thereinbefore set forth, and repeats and restates, all and singular, such facts and matters, and that the defendant would give evidence in mitigation as well as justification.

At the close of the trial the jury returned a verdict wherein they found for the plaintiff and assessed her compensatory damages at $1,545, and punitive damages at $500, making in the aggregate $2,045. From the judgment entered thereon the defendant appeals.

1. Error is assigned because the court refused to sustain an objection to any evidence under the fourth cause of action set forth in the complaint, on the ground that the same does not state facts sufficient to constitute a cause of action. The complaint alleges that the words were spoken in the Holland language, and, on a true translation thereof into English, are and meant and were understood to mean as stated in the complaint. Had a regular demurrer been interposed to that cause of action, it would probably have been sustained. But a pleading is to be more liberally construed when the objection is first raised by demurrer *ore tenus*. Here it was not raised until what constitutes twenty-nine printed pages of testimony had been taken on the part of the plaintiff. The plaintiff had called and examined two witnesses, including the defendant, who had testified to the effect that in his conversation with Verkuylen at Forest Junction, alleged, he had said: "Have you got the news from Hollandtown? There is something going on,"—"something loose;" that "she looked big in the abdomen." "She looked like a woman that was in the family way;" and that

he told Verkuylen "that she looked that way;" that he had "heard that she was going to Freedom;" that "the servant [that is, the maid] is over half when she was sick;" "that she looked about halfway;" that he did not say in that conversation with Verkuylen that he laid the blame on the young priest, but said he "heard that it was from a workman." Such evidence was given without objection. It tended to make certain the ambiguous translation alleged in the complaint. Besides, as indicated, in answering that cause of action it is alleged, in effect, that the plaintiff was then "pregnant of a bastard child;" that at the time of his conversation with Verkuylen the defendant was informed and believed that the plaintiff was guilty of fornication, and was then pregnant of a bastard child, and pleaded the truth thereof in justification. Such being the facts, the portion of the complaint relating to the fourth cause of action should be deemed to be amended so as to conform to the facts, or the defect should be disregarded. *Vassau v. Thompson,* 46 Wis. 345; *Forcy v. Leonard,* 63 Wis. 353; *Atkinson v. Harran,* 68 Wis. 405; *Slater v. Estate of Cook,* 93 Wis. 104; *Hubbard v. Haley,* 96 Wis. 578, 587; *Little v. Staples,* 98 Wis. 347, 348; *Packard v. Kinzie Ave. H. Co.* 105 Wis. 329. It is not the case of a failure of proof or anything to support the finding. *Kruschke v. Stefan,* 83 Wis. 383. We must hold that the court properly overruled the objection to any further evidence under the fourth cause of action alleged.

2. The third cause of action was taken from the jury for the reason that it is alleged in the complaint as having been spoken in the English language, whereas it appears from the evidence that it was spoken in the German language, and no translation is alleged. The case, therefore, was submitted to the jury on the first, second, and fourth causes of action alleged. The plaintiff was properly allowed, however, to prove what the defendant said to Wolfinger at the city of Kaukauna, March 1, 1900, in regard to the plaintiff's chas-

tity, as bearing upon the question of his malice in making the other defamatory statements alleged.

3. Exception is taken to that portion of the charge which reads as follows:

"It is admitted that the proof shows that the defendant did say of the plaintiff that she was pregnant, in the presence of witnesses who heard and understood the charge, and that the charge was false; and it is conceded by the counsel that under the law *as construed by the court,* although different from what he claims it should be, that your verdict must be for the plaintiff for some amount, which is the actual damage that the plaintiff has sustained in consequence of the slander."

Near the close of the testimony the trial judge announced, in effect, that it did not seem to him "that the communications made under the circumstances, as disclosed by the testimony," could be regarded as privileged. Exception was taken to such remark, and also the refusal of the court to charge the jury that "the alleged slanders in this case were qualifiedly privileged communications and, to entitle the plaintiff to recover, she must show actual malice on the part of the defendant, and the burden of proving such malice is upon the plaintiff." This court has repeatedly stated the rule as to what constitutes a conditionally privileged communication, and no repetition here is required. We refer to some of the more recent adjudications upon the subject. *Rude v. Nass,* 79 Wis. 321, 327–329; *Brown v. Vannaman,* 85 Wis. 451, 455; *Buckstaff v. Hicks,* 94 Wis. 34, 39–41; *Hellstern v. Katzer,* 103 Wis. 396. "The cardinal principle with reference to" conditionally privileged "communications is that they must be made in good faith, by one who owes a duty or has an interest in the subject matter, to one to whom the duty is owing, or to one who has a corresponding interest." *Buckstaff v. Hicks, supra,* and the other cases cited. The duty mentioned should be such as to call for action,— legally, morally, or socially,—and the interest mentioned

should be such as to call for or justify investigation. As said by Campbell, C. J., in a case cited:

"There is no right to make untrue and injurious statements concerning others, when they are not made to persons having right and power to investigate, and in an honest attempt to invoke such investigation or answer such inquiry." *Foster v. Scripps,* 39 Mich. 382.

Of course every person is interested in the good name of the community in which he lives, but that does not give to one neighbor the privilege of slandering another neighbor by talking to a third. The same is true as to members of a church. Thus, in a case cited, the defendant, a member of a church, was appointed, with the plaintiff and other members of the church, on a committee to prepare a Christmas festival for the Sunday school. He declined to serve, for the reason, as stated by himself, that a third member of the committee had been guilty of an offense with the plaintiff similar to the one here charged; and the court held it was not a privileged communication. *York v. Johnson,* 116 Mass. 482. To the same effect is *Lovejoy v. Whitcomb,* 174 Mass. 586. There is less plausibility in claiming that the communication in the case at bar is privileged. The only relationship between the plaintiff and defendant is that they were both members of the same church. The priest of the church may possibly have had a superintending care over, and right to discipline, the plaintiff, but the communications complained of were addressed to no one having such authority. While such communications incidentally involved the conduct of the young priest, who may have been an officiating priest in the church of which the defendant and his family were members, yet we are not called upon here to consider whether such communications might have been privileged as against him. We must conclude that there was no error in holding that the communications were not privileged. This makes it unnecessary to consider other requests to charge, based upon the

theory that such communications were privileged, or calling upon the court to define the law in respect to such privileged communications.

4. It appears that soon after the action was commenced the plaintiff obtained judgment by default. Sufficient cause having been shown, the trial court set aside the default and allowed the defendant to answer. Upon the trial of the action, and in the opening address to the jury, counsel for the plaintiff, referring to such judgment by default and the opening of the same, and contrary to the repeated rulings of the trial court, said:

"The defendant, *Sprangers,* did not put in an answer, but immediately went to work to get rid of his property." "It is competent to show the defendant's attitude and dealings in reference to this charge all the way through. If the defendant can explain it, he may do so; but it is competent to show the entire transaction, that throws any coloring about this action." "Is it not proper to show a man's motive for doing a certain thing?" "I simply do it to show this man's actions concerning this charge, his knowledge of it, and the fact that he, instead of defending the action, as a man charged with an offense of this kind would do, disposed or attempted to dispose of his entire property."

The default and the opening of the same and allowing the defendant to answer, were all matters for the court and fully disposed of before the cause was reached for trial. The defendant was entitled to a fair trial of the issues raised by the pleadings, without reference to the default. Nevertheless counsel for the plaintiff persisted in making such statements after the trial court had repeatedly ruled that they were improper. The defendant was examined as a witness in his own behalf, and on cross-examination of him, and against numerous rulings of the trial court, counsel for the plaintiff persisted in a series of irrelevant questions, some of them relating to such default, and to some of which he obtained answers well calculated to arouse the prejudice and

passions of the jury against the defendant, and probably increased the amount of compensatory damages, as well as punitory damages. This court has so often and so uniformly condemned such conduct as to make it inexcusable. For some of the more recent cases bearing on the subject, see *MacCarty v. Whitcomb,* 110 Wis. 124.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

On February 18, 1902, a motion by the respondent to change the judgment of this court was granted, the facts being thus stated by MARSHALL, J.:

Judgment on the appeal in this case was rendered November 29, 1901, during the August term of that year. The term came to an end December 20, 1901. After the commencement of the present term of court, and on January 15, 1902, motion papers were filed with the clerk in proceedings to obtain a change in the judgment so that, instead of directing the cause to be remanded for a new trial, it would allow the error in the judgment to be cured by remitting therefrom such sum as in the judgment of the court would reduce the amount of plaintiff's recovery to a proper sum. The motion papers were served on the attorney for appellant January 16, 1902. The time set for hearing the motion was January 24, 1902. The court was not in session on that day, hence the hearing of the motion went over to January 28th, the next court day under the rules. That was the last day of the sixty-day period for the retention of the record, unless the time was extended by order of the court. On January 21, 1902, a paper was filed with the clerk, signed by the attorneys for the respondent, stating that the appellant's attorney desired to have the hearing of the motion continued from January 28th to January 31st thereafter, and that respondent's attorney consented thereto on condition of the court

making an order directing the clerk to retain the record in
the cause for the purpose of the motion, and that the court
was requested by respondent's counsel to make such an order.
On January 28, 1902, the motion was taken up and the paper
referred to called to the attention of the court.   Thereupon
a motion was made and granted to continue the hearing to
January 31, 1902, no express order being made directing the
clerk to retain the record for the purpose thereof.   On said
day the motion was brought up for hearing pursuant to the
continuance, and the granting thereof was opposed on juris-
dictional grounds, among others.   The reason urged in favor
of the motion on the merits was that, the appellant having
died on the 18th day of December, 1901, after the judgment
was rendered, unless the relief asked for was granted, re-
spondent would lose all redress for the wrong complained of
because the cause of action was one that would not survive.
Further, that the rights of the parties were sufficiently set-
tled by the trial already had so that the court might properly
have permitted respondent to have judgment notwithstand-
ing the error which prejudicially affected the amount of the
verdict.

*P. H. Martin,* in support of the motion.

*Lyman E. Barnes, contra.*

MARSHALL, J.   Counsel for appellant concede that the
motion of respondent should be classed as one for a rehear-
ing, but contend that the court had no jurisdiction of the
case because the record therein was not retained here by order
of the court beyond the sixty-day limit, requiring the same
to be retained for the purpose of a rehearing; and further,
that, conceding that the jurisdiction of the case continued
up to the time the motion was submitted, Rule XX, as to the
time and manner of making the motion, was not complied
with, which precludes its being heard under the settled prac-

tice of the court. The two propositions can best be considered together.

It is elementary that a court has no right to make any change in a judgment except to correct mere mistakes in that the entry thereof was not in accordance with the judgment pronounced, unless there is a motion for a rehearing, made within the time provided or authorized by sec. 3071, Stats. 1898. Such a motion, by force of the statute, carries jurisdiction of the case in which it is made over from one term to another, permitting the court to revise or vacate or change a judgment in any way which may reasonably be considered as within the scope of a motion for a rehearing, as the term is used in the section. The court has gone a great way in giving a liberal construction to the statute in order to preserve its control over cases as long as the law, in any reasonable view thereof, will permit, to the end that complete justice may be done. It has been held to cover many situations other than a motion for a rehearing strictly so called, which the court has seen fit to call a motion in the nature of a motion for a rehearing. The decisions of the court which apply to the latter class of motions do not in all respects apply to the former, and unless that is understood much want of harmony will appear to exist in the decisions of the court in regard to such matters.

Counsel for appellant cite many cases to our attention to the effect that a motion for a rehearing must be made within thirty days after the rendition of judgment, and in all respects in compliance with Rule XX, or it cannot be entertained, failing to discover, as it seems, that they relate only to a motion for a review of a question presented by the record which was or should have been passed upon at the first hearing, a motion for a rehearing strictly so called, not one of the character of that before us, called a motion in the nature of a motion for a rehearing. *Krall v. Lull,* 46 Wis. 643, is a good example of the latter class. The application was

for an order vacating a judgment for affirmance under the rules. *Bonin v. G. B. & W. R. Co.* 43 Wis. 210, is another example. There the application was to set aside a dismissal of the appeal under the rule. In such case it was held that the motion partook of the character of the motion for a rehearing, so as to be governed by sec. 3071, Stats. 1898, as regards the effect thereof upon the jurisdiction of the court, but that it was not a motion for a rehearing within the meaning of Rule XX, as to the time and manner of making and submitting the same. In the first case cited a judgment was rendered at the August term, 1878, and on November 18th of that year. At the next term, and on January 14, 1879, an order to show cause why the judgment should not be set aside and the appeal reinstated was granted, returnable January 28th thereafter. The court not being in session on the return day of the order, the hearing thereon went over to February 27th, when it was heard. The motion was decided in favor of the moving party April 22d thereafter. All those facts do not appear in the printed report of the case, but they do on the journal of the court. It will be seen that the motion was not made till nearly sixty days after the judgment was rendered. It is so stated in the opinion. The court, however, held that it was in the nature of a motion for a rehearing, not a motion for a rehearing strictly so called; that jurisdiction over the cause was retained for such motion beyond the judgment term by force of sec. 3071, Stats. 1898, as construed in *Bonin v. G. B. & W. R. Co., supra.* It will be seen that no attention was paid to Rule XX, and the reason therefor will be discovered by reading the opinion in the *Bonin Case.* There it was held that the statute requiring the retention of a case determined by this court for a certain length of time for the purpose of a motion therein for a rehearing, covers an application for a change in the decision other than one resulting from a rehearing of questions presented by the record, and

which should have been but were either not considered or
were not properly considered on the first hearing, applications
for which the procedure required by Rule XX is not suitable
and to which it does not apply; that an application to vacate
a judgment by default, while within the reasonable scope of
a motion for a rehearing under sec. 3071, is made ordinarily
at the bar of the court on affidavits or papers showing some
reason therefor; that when a motion in the nature of a mo-
tion for a rehearing is made within the time limited by law
for the retention of the record for the purpose of a rehearing,.
it will be entitled to be heard if the record is retained pur-
suant to law, regardless of Rule XX. Those cases pretty
definitely settle the practice as regards the nature of a motion
like the one before us, and that neither Rule XX nor Rule
XXI applies thereto. *Wis. F. & M. Ins. Co. Bank v. Wilkin,*
95 Wis. 111, was decided according to such practice. A mo-
tion was made to change the judgment as in this case. It.
was made at the term subsequent to that at which the judg-
ment was rendered. Rules XX and XXI were disregarded.
The motion was made within the sixty-day limit for making
a motion for rehearing under sec. 3071, upon the theory that
it was a motion in the nature of a motion for rehearing, and
governed by the cases to which we have referred. The court.
granted the motion, no opinion being filed. It is plain, how-
ever, that the contention of counsel for the moving party as.
to the character of the motion, prevailed, as in no other way
could the result reached be justified. The reason why no
opinion was filed, as we remember it, was that it was consid-
ered that *Bonin v. G. B. & W. R. Co.* and *Krall v. Lull,*
*supra,* had firmly settled the law governing the matter. We
are unable to find any opinion, or expression in any opinion,.
of this court, out of harmony therewith, except one made in.
*Patten P. Co. v. G. B. & M. C. Co.* 93 Wis. 283. A motion
classed as one in the nature of a motion for a rehearing was
there spoken of as irregularly made because Rule XX was.

not complied with. Nevertheless the court entertained the motion, it having been made within the sixty-day limit for the retention of the record under sec. 3071.

From what has been said it will be seen that the decisions in *Gough v. Root,* 73 Wis. 32, and other cases, as to the necessity of complying with the procedure laid down in the court rules for a motion for a rehearing, have no application to a motion such as the one before us. The remark in *Bonin v. G. B. & W. R. Co.* 43 Wis. 210, that the rules as they then existed did not apply to such a motion, is true now. The rules have not been changed since that decision was rendered, in regard to the matters here involved. It follows that a motion in the nature of a motion for a rehearing, such as the one under consideration, can be made and heard while the court has jurisdiction of the cause under sec. 3071, that is, while the record remains in this court, by force of the statute alone, or that and an order of the court pursuant thereto, for the purpose of a motion for a rehearing, using the term in its broad sense.

If the record in this case was not retained here pursuant to sec. 3071 after the 28th day of January last, pursuant to an order of the court to that effect, then the jurisdiction of the court terminated on that day, and it is without jurisdiction now to entertain the motion. In our judgment the record was so retained, though no express direction to that effect was made. The request of counsel for appellant, made for a continuance of the motion from January 28th to January 31st thereafter, and the consent of counsel for respondent thereto on condition of the record being retained by order of the court for the purpose of the motion, and the continuance of the motion by order of the court, upon such request and consent being brought to the attention of the court, necessarily included a direction to the clerk to retain the papers for the purposes of the motion. The clerk so understood it. Therefore, there is no want of jurisdiction to entertain the

motion so far as the retention of the record is necessary thereto, and no laches of the moving party to be excused in that there was a failure to comply with the court rules on the subject of motions for rehearings.

Counsel for appellant contend that, admitting the jurisdiction of the court to still exist to make any proper change in its decision, the one requested should not be made because not justifiable by precedents; that the court has not heretofore gone so far as to permit a plaintiff, after the reversal of a judgment in his favor, to take judgment for a less sum, where there was not left a determination of facts entitling him to recover some amount which could be arrived at reasonably by computation. *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, upon which counsel for respondent confidently rely, is referred to as an extreme and doubtful authority, and it is said that it does not go as far as the court is requested to go in this case. There the court entirely eliminated an element of alleged injury for which the jury had awarded the plaintiff compensation, as part of a sum covering many elements of injury, though there was no satisfactory evidence that the particular injury mentioned was in fact suffered. We are entirely satisfied with that decision. It was followed in *MacCarthy v. Whitcomb,* 110 Wis. 113, where the amount required to compensate the plaintiff was as difficult of ascertainment as in this case.

The decision in the *Baxter Case* did not announce any new rule or principle. At most it involved an application of an old principle to a different state of things than it had been theretofore applied to, in harmony with the development of judicial administration constantly going on in the application of old principles to new situations, so as to render the administration of justice more certain and efficient to serve the ends for which courts exist. Law is a progressive science. While principles do not change, their application is constantly being extended as the necessities of new con-

ditions and the better administration of the law seem to de-
mand.    No more praiseworthy advancement can be made
along that line than one which secures to a person a fair com-
.pensation for a wrong done to him by a responsible party
before he shall have been compelled to intensify the injury
by vexatious and expensive efforts to obtain a fair equiva-
lent for his loss.    One of the greatest infirmities of the reme-
dies afforded by courts for wrongs suffered is the necessary
pecuniary loss that must ordinarily be sustained by an in-
jured person in efforts to obtain redress, even if he finally
recovers judgment and realizes upon it.    Such loss generally
leaves the result far short   of rendering to the injured per-
son an equivalent for his damages.    Sometimes the remedy
turns out to be entirely ineffective except in form and in that
it punishes the wrongdoer.    Where a case has been once fully
tried, resulting in a decision just in every respect, except as
regards the amount of damages assessed, regardless of the de-
gree of such excess or the particular element in which the in-
firmity exists, if the court can name a sum which will in all
reasonable probability cure the mischief, leaving a sum suf-
ficiently small to leave no substantial reason for expecta-
tion that a new trial would make it less, and the plaint-
iff is willing to take that amount and end the litigation,
there is no reason whatever why such a course should not
be adopted.    True, there was a tenderness during the early
history of the court in  applying that principle, which
resulted in some doubt being expressed as to whether it could
be applied by this court especially in tort cases, as indicated
in *Corcoran v. Harran,* 55 Wis. 120.    That situation long
ago ceased to exist.    This court sits for the correction of
errors.    It may serve that . purpose as efficiently as re-
gards a violation of the rights of a party in a case like
. this, in that the assessment of damages is excessive, by
eliminating that excess, if a sum can be named so small
that a jury. would not in any reasonable probability bring

in a less sum upon a new trial, as could be done by leaving the parties to settle the controversy by further expensive litigation. The court in this case, when it was decided, might well have taken that course, and probably would have done so if the subject had been suggested by respondent's counsel. It would have been a better disposition of the cause if that course had been adopted independent of any suggestion from counsel. No good reason is perceived why plaintiff should not have been granted permission to take judgment for such a sum as would, in all reasonable probability, take from the amount found by the jury the element of inflation caused by their being improperly swung away from a proper consideration of the evidence by the course of counsel, which the court felt bound to condemn, as indicated in the opinion.

This and other courts have frequently permitted a plaintiff to take judgment for a sum less than the amount awarded by the jury in a case like this, or involving similar difficulties as regards an ascertainment of the proper amount of compensatory damages, instead of putting the parties to the expense of a new trial. *Corcoran v. Harran,* 55 Wis. 120; *Pratt v. Pioneer Press Co.* 35 Minn. 251; *Blunt v. Little,* 3 Mason, 102; *Upham v. Dickinson,* 50 Ill. 97; *Holmes v. Jones,* 50 Hun, 345; *Kinsey v. Wallace,* 36 Cal. 462. True, quite a difference of opinion is found to exist in the decisions of the courts as regards the extent to which the principle involved should be applied, but they involve mere judicial policy, not judicial power. In *Kinsey v. Wallace* the cause of action was for malicious prosecution. Judgment was rendered in favor of the plaintiff. On appeal it was held that the verdict of the jury was excessive and it was ordered that if, within twenty days succeeding the filing of the opinion, the plaintiff should file in the appellate court a stipulation remitting $4,600 from the judgment and consenting to a reduction of the judgment to that extent, it should be reduced accordingly, and as reduced affirmed; but if the plaintiff

failed to file such stipulation within the time prescribed, then that the judgment should be reversed and the cause remanded for a new trial. In *Holmes v. Jones,* the cause of action was for libel. On appeal the verdict of the jury was held excessive and the court reversed the judgment on that ground and ordered a new trial unless the plaintiff should stipulate to reduce the verdict to a sum named by the court, but in the event of such stipulation being made within twenty days after service of a copy of the order, that the judgment should be modified accordingly, and as modified affirmed with costs.

The right of the court to change the judgment as requested is questioned because of the death of the defendant, upon the theory that respondent, at the time such death occurred, had and now has only a mere pending cause of action. If that be so, and it be true, as counsel for appellant claims and counsel for respondent seems to concede, that the cause of action is not one of the class which survives under such circumstances, the court would be powerless to act. Death would necessarily be considered as having forever ended the controversy. *Stout v. I. & St. L. R. Co.* 41 Ind. 149. The power of the court, however, in its discretion, to allow judgment to be perfected after the death of one of the parties to the litigation, where the right to recover prior thereto was established by the verdict of a jury or decision of the court, leaving no necessity for further proceedings in that regard, and the delay is in any reasonable view attributable to the court, is an old common-law principle which cannot be found questioned anywhere. *Spalding v. Congdon,* 18 Wend. 543; *Dial v. Holter,* 6 Ohio St. 228; *Perry v. Wilson,* 7 Mass. 393. That power has been exercised by courts, both of law and equity, from time immemorial, and has been frequently said to be an inherent power, one which need not be conferred by legislative enactment. It has even been questioned whether the legislature has power to take it away. *Mitchell v. Overman,* 103 U. S. 62; *Reid v. Morton,* 119 Ill. 118;

---

---

*Long v. Long,* 85 N. C. 415; *Shephard v. Brenton,* 20 Iowa, 41.    The foundation principle upon which the power rests is that no one should be allowed to lose the legitimate fruits of litigation to which he is a party by mere delay in the administration of the law, whether that delay be caused by the act of the court alone, or by the act of the party against whom relief is sought, or of his counsel.    Courts, as a rule, have refused to exercise the power to enter judgment *nunc pro tunc* merely to save a prevailing party from loss in the event of the death of his adversary occurring subsequent to the verdict and during a period of delay caused by such prevailing party himself, although such delay was not attributable to negligence, confining relief to the cases where delay was caused by the law, either directly and solely by the act of the court or by the law being set in motion to that effect by the adverse party.    *"Actus curiæ neminem gravabit."* *Freeman v. Tranah,* 12 C. B. 406.; *Spalding v. Congdon,* 18 Wend. 543; *Clay v. Smith,* 3 Pet. 411; *Womack v. Sanford,* 37 Ala. 445.

Two tests are generally applied: first, the delay must have been caused, as before indicated, otherwise than by the act of the party seeking the relief,—certainly, otherwise than by any fault of his,—and be in some way attributable to the court directly or indirectly; second, the cause must have been substantially ready for judgment, or so judgment might have been rendered before death occurred.    Freeman, Judgments, §§ 57, 60; *Blaisdell v. Harris,* 52 N. H. 191.    In the last case cited will be found a very full discussion of the subject.    The power of a court to save a litigant who is in no way at fault for the delay resulting in the death of one of the parties prior to judgment being perfected, is undoubted. It is a matter of judicial policy, guided by precedents when and when not to apply it.    It is considered that this case falls within the principles which have governed courts in exercising such power.    The delay in giving the relief to which

plaintiff is really entitled may fairly be attributed, in some respects to the court, not to laches on her part. In view of the well-settled rules of the court that a new trial will not be ordered upon a reversal where the right to recover is established, the only error being an excessive assessment of damages, if, regardless of the cause thereof, a sum can readily be ascertained by the court which will in all reasonable probability cure the error, and there is no good reason why it should not be so cured,—it would seem that such rule should have been followed in this case.

In most if not all the cases where the court has ordered judgment after the death of a party, as of the time when he was alive, to prevent a failure of justice, there was no necessity for any change in the determination reached in his lifetime, as to the amount for which judgment should go. No precedent for an extension of the rule to a case where the verdict of the jury is too large, but in all other respects is unimpeachable, has been cited to our attention or found by our own investigation of the subject. But no reason is perceived why the appplication of the principle should not be so extended, if it has not been heretofore, so as to cover any situation where the right to recover has been settled, the verdict of the jury or decision of the court as to that has not been disturbed, a new trial cannot be reasonably expected to involve any fair controversy except as to the amount to be awarded as damages, there is no absolute right to such a new trial, and the delay in the final termination of the litigation can be, in any reasonable view of it, said to have been caused by the court not providing for a termination of the suit without a new trial. If there is no precedent for such a use of the power of the court to award judgment, there can be no more opportune time than the present to make one; and the peculiar circumstances of this case call loudly for it. In responding favorably to such call we are but following the course that

has been working for ages to develop a system of law as perfect as man can make it, to accomplish the only legitimate purpose of the law and its administration by courts. The question does not involve judicial power; only judicial policy, the creature of the courts, which, although guided by precedents, is never so absolutely tied by them as to be incapable of advancement. They are controlled, as regards the unwritten law, only by principles.

We have left to consider only the amount to which the judgment appealed from should be reduced, in order to, in all reasonable probability, fully free it from the effect of the improper conduct of the trial, mentioned in the opinion filed. We shall not take time to give reasons for the conclusion to which we have arrived on that point. It is considered that the judgment should be reduced to such sum as will eliminate entirely all punitory damages and will also take from it a substantial part of the amount awarded for pecuniary loss. In order to accomplish that beyond room for reasonable controversy, it is considered that the judgment must be reduced to $1,000 exclusive of costs, and that under the circumstances it should be perfected here if respondent sees fit to submit to the decision of the court.

*By the Court.*—The judgment heretofore rendered in this action is vacated and respondent permitted, within twenty days after the filing of the foregoing opinion, to file with the clerk of this court her consent to a reduction of the judgment appealed from to $1,000 and costs as taxed. In case such consent shall be filed, the judgment will then be modified accordingly and affirmed as of the time when the cause was first submitted, with costs as heretofore taxed and allowed in favor of appellant. In case such consent to a modification of the judgment is not filed as indicated, it will stand reversed as of the time of the original reversal thereof, and the cause be remanded to the circuit court for further proceedings ac-

cording to law.    No costs will be allowed to either party
upon this motion.    The moving party will pay the clerk's
fees on the motion.    ·