BASSETT, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*November 9, 1918—April 2, 1919.*

*Commerce: Interstate shipments: Bill of lading and published rates, when binding: Connecting carriers: Responsibility for loss or damage: Valuation as limit of recovery: Negligence: Joint tortfeasors: Supreme court: Jurisdiction, when ceases: Motions for rehearing: Failure of counsel to call attention to statutes.*

1. Under the Carmack amendment (of June 29, 1906) to the interstate commerce act (34 U. S. Stats. at Large, ch. 3591, p. 595), the carrier receiving property for interstate transportation was required to "issue a receipt or bill of lading therefor," and this constituted the contract between the shipper and all the carriers participating in the service.
2. The published rates prescribed by said act, based upon valuation, were presumed to be equally within the knowledge of carrier and shipper, and both were bound by them as a matter of law.
3. While the receiving carrier was responsible, under said statute, for the whole carriage, each participating carrier might be sued for loss or damage occurring on its own line, and the liability of the carrier sued was fixed by the applicable valid terms of the original bill of lading.

4. Under said statute, where the parties to an interstate shipment agreed upon a valuation of the property, for the purpose of determining the rates to be charged, or where the shipper paid an alternative rate based upon a certain valuation, such valuation limited the amount which he might recover for loss or damage due to defaults of the carriers; and it was immaterial whether such loss or damage was caused by ordinary negligence or by gross negligence as defined in the law of this state. *Tradewell v. C. & N. W. R. Co.* 150 Wis. 259, so far as it conflicts herewith, overruled.

5. Where damage to property in the course of interstate transportation was caused by concurring negligence of the delivery carrier and of a preceding connecting carrier, they were joint tortfeasors and each was responsible for the entire result, the shipper's recovery, however, not to exceed the amount limited as above stated.

6. Under sec. 3071, Stats., the jurisdiction of this court in a case brought here by appeal or writ of error ceases at the end of sixty days from the date of its decision of the case, even though the clerk has not actually remitted the papers to the lower court, unless such papers have been retained by order of this court made within said sixty days.

7. After the jurisdiction of this court has so terminated, an order therein opening the default of a party to move for a rehearing and permitting him to file such a motion is a nullity.

8. Although, owing to the omission of counsel for both parties to call attention to the Cummins amendments (of March 4, 1915, and August 9, 1916) to the interstate commerce act, the decision and judgment in this case were based upon the law as it existed prior to such amendments, yet, no order directing retention of the record and no application for relief by way of a motion for rehearing or otherwise having been made within sixty days after such decision, this court is powerless to reopen the case and determine the rights of the parties under said amendments.

APPEAL from a judgment of the municipal court of Langlade county: T. W. HOGAN, Judge. *Modified and affirmed.*

This action was brought by the plaintiff to recover damages for injuries alleged to have been suffered by a race horse belonging to him while in shipment from Ottawa, Illinois, to Manitowoc, Wisconsin.

The complaint alleges in substance that at 6 p. m. August 14, 1917, a race horse, a mare, valued at $1,000, was de-

Bassett v. Chicago & N. W. R. Co. 168 Wis. 617.

livered to and accepted by the Chicago, Rock Island & Pacific Railway Company at Ottawa, Illinois, for shipment *via* it and the defendant railroad to Manitowoc, Wisconsin; that the mare was in perfect condition when delivered to the railway company; that she was immediately loaded in a car and remained in that car without unloading for food or water, rest, or exercise, and that she was not properly watered in the car before she arrived at Manitowoc on August 20th, having been in the car continuously for six days; that the mare, at time of shipment, was in racing form and was shipped for the purpose of entering the races at Manitowoc and other points; that the agent at Ottawa, Illinois, was notified at the time of the acceptance of the mare that she was a race horse and that plaintiff expected to use her for the purpose of racing; that it was the duty of the railroad companies, including the defendant, to care for the animal properly and to unload and rest, feed, and water her at least once in every twenty-eight hours for a period of five hours, as required by the provisions of sec. 4386, R. S. of U. S.; that, disregarding these duties, the railway companies, including the defendant, allowed the horse to remain in the car in which it was loaded at Ottawa for a period of five days and nineteen hours without furnishing her sufficient water to sustain her; that as the result of such carelessness and negligence the mare was permanently injured; that the plaintiff expended large sums for the care and nursing of the animal; that the mare has ever since been unfit for service of any kind either as a race horse or driving horse.   Damages to the sum of $1,000, together with the costs and expenses of the action, were demanded by the plaintiff.

The defendant denies that the mare was injured by any negligence or carelessness on its part, and alleges that among other terms and provisions of the written contract under which the mare was accepted for shipment were the following: that the Chicago, Rock Island & Pacific Rail-

way Company "will transport for the second party . . . one mare, value $150;" and that "the second party shall assume all risk and expense of feeding, watering, bedding, and otherwise caring for the live stock covered by this contract while in cars, yards, pens, or elsewhere, and shall load and unload the same at his expense and risk;" and "that the first party shall be exempt from all liability for loss, damage, or injury to the person or persons or live stock covered by this contract arising from derailment, collision, fire, escapement from car, heat, suffocation, overloading, crowding, maiming, or other accidents or causes of any kind or character, *unless such loss, damage, or injury is the direct result of negligence on the part of the carrier.*"

The defendant further alleges that any duty on the part of the Chicago, Rock Island & Pacific Railway Company or the defendant to unload the mare from the car for rest, food, and water was abrogated and modified by an indorsement in writing upon the contract of shipment by which it was mutually agreed that the mare was to be fed and watered in the car; that the mare was carried in a car in which it would and did have proper food, water, space, and opportunity to rest, without the necessity of being unloaded; that the mare was not in the defendant's possession or carried by it for a longer period than twenty-eight hours without food and water.

The jury found, by a special verdict, that the mare was injured while in transit; that such injuries were not caused by a want of ordinary care on the part of the defendant, but by a reckless or wanton neglect of duty on the part of the defendant; that such reckless or wanton neglect of duty was the proximate cause of the mare's injuries; that the consignor and the agent of the Chicago, Rock Island & Pacific Railway Company did not agree upon $150 as the value of the mare; and that $821.80 was reasonable compensation to the plaintiff for the damage he sustained.

Judgment was rendered in favor of the plaintiff for $920.14, damages and costs. Appeal is taken from this judgment.

For the appellant there was a brief by *Edward M. Smart,* and oral argument by *R. N. Van Doren,* both of Milwaukee.

*Arthur Goodrick* of Antigo, for the respondent.

The following opinions were filed December 3, 1918:

SIEBECKER, J.    The rights and liabilities of the parties to this action are governed by the act of Congress of June 29, 1906, regulating interstate commerce.    By sec. 20 of this act (Carmack Amendment, 34 U. S. Stats. at Large, 584, ch. 3591) Congress has fixed the liability of carriers respecting loss and damage of interstate shipments.    This legislation has been repeatedly declared by the federal supreme court to supersede state regulation on the subject and to provide a uniform system of regulation and rules fixing the liability of interstate carriers and prescribing the effect of bills of lading.    *Adams Exp. Co. v. Croninger,* 226 U. S. 491, 33 Sup. Ct. 148; *Kansas City S. R. Co. v. Carl,* 227 U. S. 639, 33 Sup. Ct. 391; *Missouri, K. & T. R. Co. v. Harriman,* 227 U. S. 657, 33 Sup. Ct. 397.

In the *Croninger* and other cases the provisions of the Carmack amendment were held to impose on the initial carrier liability for loss and damage caused by any connecting carrier as well as for its own defaults, and that its contract of shipment is binding on all carriers for the entire transportation.    *Cleveland, C., C. & St. L. R. Co. v. Dettlebach,* 239 U. S. 588, 36 Sup. Ct. 177; *Georgia F. & A. R. Co. v. Blish M. Co.* 241 U. S. 190, 36 Sup. Ct. 541.

Under the act every initial carrier is required "to issue a receipt or bill of lading" upon receipt of a shipment, which constitutes the contract between the shipper and all the carriers.    Under the act the parties may agree upon a valuation of the property shipped for the purpose of charg-

ing the published rates prescribed under the act, based upon valuation, and a carrier is obligated to charge such rates to carry out the purposes of Congress in regulating interstate transportation to secure uniformity of rate and prevent unjust discrimination. Such published rates are presumed to be equally within the knowledge of carrier and shipper, and both are bound by them as a matter of law. *Chicago & A. R. Co. v. Kirby,* 225 U. S. 155, 32 Sup. Ct. 648; *Kansas City S. R. Co. v. Carl,* 227 U. S. 639, 33 Sup. Ct. 391; *Boston & M. R. Co. v. Hooker,* 233 U. S. 97, 34 Sup. Ct. 526; *Great Northern R. Co. v. O'Connor,* 232 U. S. 508, 34 Sup. Ct. 380.

In the *O'Connor Case* the court declared:

"But so long as the tariff rate, based on value, remained operative, it was binding upon the shipper and carrier alike, and was to be enforced by the courts in fixing the rights and liabilities of the parties. The tariffs are filed with the commission and are open to inspection at every station. In view of the multitude of transactions, it is not necessary that there shall be an inquiry as to each article, or a distinct agreement as to the value of each shipment. If no value is stated, the tariff rate applicable to each state of facts applies. . . . If sued for their loss it [the carrier] is liable only for the loss of what the shipper had declared them to be in class and value."

The connecting carrier's liability to a shipper was considered in *Missouri, K. & T. R. Co. v. Ward,* 244 U. S. 383, 37 Sup. Ct. 617, and it was there held:

"While the receiving carrier is thus responsible for the whole carriage, each connecting road may still be sued for damages occurring on its line; and the liability of such participating carrier is fixed by the applicable valid terms of the original bill of lading." *Bichlmeir v. M., St. P. & S. S. M. R. Co.* 159 Wis. 404, 150 N. W. 508; 10 Corp. Jur. § 894, p. 541.

It is obvious that the shipment of this mare was an interstate shipment and that the provisions of the interstate commerce act apply. There is no dispute but that the ship-

Bassett v. Chicago & N. W. R. Co. 168 Wis. 617.

per paid an alternative rate based on a $150 valuation of the mare. This legally limits the amount plaintiff is entitled to recover for loss and damage to her for any defaults of the carriers in transporting her to destination. In view of the state of the case on this point it is immaterial whether the alleged damage was the proximate result of ordinary or gross negligence as defined in the law of this state.

The defendant contends that there is no evidence in the case to support the finding of the jury that defendant was guilty of either gross or ordinary negligence. We have examined the evidence and find that the evidence tending to show the condition of the mare upon her arrival at Manitowoc was sufficient to warrant an inference by the jury that she had not been properly cared for during shipment and that such condition was attributable to a lack of water and food combined. If the mare was in fact mistreated as alleged, then such mistreatment is partly attributable to the carrier who had charge of her before defendant received her as delivery carrier; but this fact cannot affect defendant's responsibility to the shipper for the whole damage. Under such a state of facts the carriers are joint tortfeasors.

"Where, although concert is lacking, the separate and independent acts or negligence of several combine to produce directly a single injury, each is responsible for the entire result, even though his act or neglect alone might not have caused it. . . . It is not necessary that they be acting together or in concert if their concurring negligence occasions the injury." 38 Cyc. 488, 489, and cases cited in the note; 10 Corp. Jur. § 894, p. 542; *Baltimore & O. S. W. R. Co. v. J. A. Wood & Co.* 130 Ky. 839, 850, 114 S. W. 734; *Georgia F. & A. R. Co. v. Blish M. Co.* 241 U. S. 190, 36 Sup. Ct. 541.

It follows that the plaintiff is entitled to recover his damage to the mare from this defendant as a joint wrongdoer, not to exceed, however, $150 in amount, this being the valuation recognized by the published tariffs, rates, and

rules, pursuant to the interstate commerce act as corresponding to the freight rate he paid for this shipment.

In *Tradewell v. C. & N. W. R. Co.* 150 Wis. 259, 136 N. W. 794, this court disregarded the published tariffs, schedules, and classifications as to alternative rates based on valuation of the articles shipped, and allowed recovery of the value of the shipment in excess of the value limited by the rate paid for the shipment. In so far as this case conflicts with the rule of the federal cases above cited, it must be deemed overruled.

*By the Court.*—The judgment appealed from is modified by limiting plaintiff's right to recover damages to the sum of $150, and as so modified the judgment is affirmed. The appellant to recover costs and disbursements in this court.

KERWIN, J. *(dissenting in part).*  I cannot agree with so much of the opinion as holds or intimates that *Tradewell v. C. & N. W. R. Co.* 150 Wis. 259, 136 N. W. 794, should be overruled. In that case it was established as a basis of the opinion that through mistake or inadvertence the value of the property was inserted in the bill of lading at about one tenth of its value. In other words, there was no agreement for a one-tenth valuation or any valuation less than the true value.

In my opinion the *Tradewell Case* is in harmony with the letter and spirit of the Carmack amendment to the Hepburn act and is not in conflict with the case at bar.

On February 4, 1919, the respondent moved for leave to open the default in moving for a rehearing and to make a motion for rehearing in the cause. The motion was argued by *John B. Sanborn* of Madison for the respondent and by *R. N. Van Doren* of Milwaukee for the appellant.

An order was entered allowing respondent's attorney to file such motion for a rehearing, and it was further ordered that the record be retained in this court pending said motion.

Upon the motion as filed there were briefs by *Arthur Goodrick* of Antigo, attorney for the respondent, and by *R. N. Van Doren* of Milwaukee, attorney for the appellant; and a brief was also filed by *H. C. Lust* of Chicago as *amicus curiæ*.

The following opinion was filed April 2, 1919:

PER CURIAM. On February 4, 1919, the court entered an order opening the default and permitting the respondent to file a motion for rehearing. The appellant challenges the jurisdiction of the court to make such order.

When the motion for opening the default was brought to the attention of the court, and objection to the court's jurisdiction was formally entered on the record, no discussion of the question was had nor was it considered by the court, and the application was granted without inquiry on the point suggested. If appellant's contention is correct, then the court is without power and the order is ineffectual and a nullity. Sec. 3071, Stats., provides:

" . . . The clerk of the supreme court shall remit to such court [from which appeal is taken] the papers transmitted to the supreme court on the appeal or writ of error, together with the judgment or decision of the supreme court thereon, within sixty days after the same shall have been made, unless the supreme court, on application of either of the parties, shall direct them to be retained for the purpose of enabling such party to move for a rehearing."

Rule 37 of this court provides that every motion for a rehearing must be filed within thirty days after the decision, and Rule 38 requires that when such a motion is filed the papers in any case shall be retained by the clerk until the motion is disposed of. The decision of this case in this. court was rendered December 3, 1918; the time for filing a motion for a rehearing expired January 2, 1919; and the sixty days for the clerk to remit the papers in the case to the court from which the appeal was taken expired February 1, 1919. There was no order made within these sixty

days by this court, upon the application of either party, under sec. 3071, Stats., directing that the papers in the case be retained in this court for any purpose.

On February 4, 1919, the day on which respondent moved the court to open the default and grant him leave to file a motion for a rehearing, such an order was made by the court. This was, however, three days after the sixty days had expired within which the clerk of this court was required by sec. 3071, Stats., to remit the papers in the case to the lower court. It was expressly held in *Hocks v. Sprangers,* 113 Wis. 123, 87 N. W. 1101, 89 N. W. 113; *Murphy v. State,* 131 Wis. 420, 111 N. W. 511; *Ott v. Boring,* 131 Wis. 472, 110 N. W. 824, 111 N. W. 833; and *Pringle v. Dunn,* 39 Wis. 435, that the jurisdiction of this court ceases at the end of the sixty days from the date of the decision of the case by virtue of the provisions of sec. 3071, Stats., even when the papers are not actually remitted, unless they are retained by the order of the court.

As stated in the *Pringle Case:*

"The statute itself regulates our jurisdiction; not the compliance or the noncompliance of the clerk with its provisions. The mere omission of the clerk to remit the record, the mere accident that the appeal papers remain here notwithstanding the statute, cannot operate to continue the jurisdiction of the court against the words of the statute."

Since no order was obtained from this court within the sixty days from the decision of the case directing that the papers in the case be retained here for the purpose of opening the default for filing the motion for a rehearing by respondent, it necessarily follows that this court was without jurisdiction on February 4, 1919, when it directed that an order be entered that the default be opened, and hence such order is a nullity and the court now has no jurisdiction to entertain the respondent's motion for rehearing in this court. If the decision and judgment in this court leaves respondent remediless to present his rights under the Cummins amendment of August 9, 1916, to the interstate com-

merce act as amended by the Carmack amendment, we deplore that the necessary steps under the statute were not taken by counsel to retain jurisdiction of the case in this court and that this court has been rendered powerless to examine the record to ascertain whether or not an error had been committed in the trial of the case and before this court as the result of an omission on his part to present all the material facts under the issues raised by the pleadings and the provisions of the Cummins amendment of August 9, 1916. The case was presented to this court by counsel of both parties upon the theory that the rights and obligations of the respective parties were governed by the provisions of the Carmack amendment to the interstate commerce act. No allusion was made to the fact that this act had been amended twice since the Carmack amendment, which materially changes this statute as to the rights of the carrier to limit its liability for damage to property in the course of transportation. It is now claimed that a point not litigated in either court should have been presented, namely, that the defendant, under the Cummins amendment of August 9, 1916, had not been authorized or required by order of the interstate commerce commission to adopt a released rate, and that the tariff under which the shipment in this case moved is not legal and effectual and hence does not operate to restrict plaintiff's recovery of damages to the specified amount of $150. The observation made by this court in the *Pringle Case* may with profit be repeated here:

"In the decision of causes before us, we must depend largely on the presentation of them by counsel. . . . If we find points not raised at the bar, we pass upon them. But if, as a rule, we should decline all reliance on the investigations of counsel, and assume to wade through all the records coming before us for all possible points arising upon them, and so perform over again the duties of the bar, we should at once so far fail in our own duties as to delay justice, which would sometimes be equivalent to denial of justice. . . . And if parties claim to have suf-

fered by mistake or neglect of counsel, and seek redress through the same or other counsel, they must do so with such diligence that they can overtake the jurisdiction of the court in the cause; so that they may be again heard without overriding the rules of law which go to the peace of society by the final end of litigation."

Concededly the decision in this case was bottomed upon the grounds that the case was governed by the interstate commerce act before it was modified by the Cummins amendments of March 4, 1915, and August 9, 1916. If the fact is that the defendant under this act was required to obtain, by order of the interstate commerce commission, the right to adopt alternative rates based on declared values of the shipment, and that it has not done so, upon which point the record is silent, then the decision that the plaintiff is restricted in his recovery to the declared value of the shipment would be inapplicable to the actual facts of the case. But under the facts and circumstances above stated we are powerless to grant any relief to reopen the case for retrial to ascertain what the true state of facts on this point is.

The motion is therefore denied, without costs.