STATE EX REL. REYNOLDS, Attorney General, Plaintiff, vs.
BREIDENBACH, Circuit Judge, Defendant.

*May 15—October 13, 1931.*

For the plaintiff there was a brief by the *Attorney General*
and *Samuel Bryan,* assistant attorney general, and oral argu-
ment by *Mr. Bryan* and *Mr. F. M. Wylie,* deputy attorney
general.

For the defendant there were briefs by *Lines, Spooner & Quarles,* attorneys, and *Louis Quarles, Charles B. Quarles,* and *Leo Mann* of counsel, all of Milwaukee, and oral argument by *Mr. Charles B. Quarles* and *Mr. Mann.*

The following opinion was filed June 12, 1931:

OWEN, J.   A controversy has arisen concerning the proper construction of the judgment and mandate of this court entered in *Falk v. Wis. Tax Comm.* 201 Wis. 292, 230 N. W. 64.   This action is brought by the State to compel the lower court to enter judgment in conformity with its construction of the mandate.   The nature of this controversy will more clearly appear from the following statement of facts :

That case involved the validity of an additional income tax imposed upon the estate of Charles F. Pfister, deceased, growing out of the sale of certain capital stock of the Sentinel Company.   It was purchased before January 1, 1911. It was sold by the executors of his estate in 1924 for $131,901.04 less than Mr. Pfister paid for it.   The taxing authorities imposed an income tax on $39,408.96 because they determined that the sale price exceeded the value of the stock as of January 1, 1911, by that amount.   It was held in the opinion in that case that no taxable income arose by the transaction, for the reason that the stock was sold for less than its cost, and that the theory that a taxable income arose because the stock sold for more than it was worth on January 1, 1911, if such was the fact, was erroneous. It was said that the value of the stock as of January 1, 1911, operated only as a limitation upon either the gain or loss material to the purposes of the income tax.   While it is stated in the opinion that the additional income tax complained of was that assessed upon the $39,408.96, which represented the difference between the sale price and the value of the stock as of January 1, 1911, it appears by a reference to the printed case that the actual amount upon which an

income tax was imposed by the county board of review and affirmed by the tax commission was $99,487. This apparently resulted from the fact that the taxpayer claimed a loss of $131,901.04, and the additional tax was based not only on the $39,408.96, assumed profit, but upon a further sum representing an excess deduction made by the taxpayer, making the total additional assessment upon the sum of $99,487. It appears from the opinion that the court determined that no taxable income arose from the transaction, and that the tax imposed upon $39,408.96 was without authority. That is the only point or question considered in the opinion. Whether the taxpayer took an excessive deduction so as to warrant an additional tax was not discussed in the opinion. The mandate reads, "Judgment reversed, and cause remanded with instructions to enter judgment vacating the assessment." The fact is, that the appeal to the circuit court was from the entire additional assessment, which was, as before stated, upon $99,487. The taxpayer construes the mandate as directing the entry of judgment setting aside the entire assessment, while the State contends that only that part of the assessment dealt with in the opinion, namely, the assessment upon $39,408.96, was vacated by the mandate.

It was the duty of the trial court to enter judgment in accordance with the mandate. A consideration of the mandate in conjunction with the opinion disclosed no ambiguity. The mandate ordered judgment setting aside the assessment. One unfamiliar with the record would assume that the assessment referred to was the assessment discussed in the opinion. However, a consideration of the record before the trial court revealed the fact that the appeal from the tax commission involved an assessment, or a feature thereof, not discussed in the opinion, and justified the existing controversy as to whether the assessment mentioned in the mandate referred to the assessment discussed in the opinion or the entire assessment made by the taxing authorities. It

thereupon became the duty of the trial court to interpret the mandate, and the supervising authority of this court may be invoked to review the determination of the lower court in its construction of the mandate.

The time has gone by when we can reconsider the case. We have lost all jurisdiction to re-examine it. *Bassett v. Chicago & N. W. R. Co.* 168 Wis. 617, 625, 171 N. W. 749, 752. Neither is there any error in the record subject to correction, as in *Hill v. Hoover,* 5 Wis. 386. All we can do at this time is to determine what the actual judgment of the court was. Undoubtedly the mandate and the opinion may be considered. *Kansas City Southern R. Co. v. Guardian Trust Co.* 281 U. S. 1, 50 Sup. Ct. 194; *Ex parte Union Steamboat Co.* 178 U. S. 317, 20 Sup. Ct. 904. We see no reason why other parts of the record, including the printed case and the briefs, which will throw light upon the question of what the court actually determined, may not also be referred to. We may not rely upon our recollection of what was actually considered in conference. This because the term during which the record of a court is presumed to reside in the breast of a chancellor or a judge has expired (15 Ruling Case Law, p. 128), if as a matter of fact that doctrine applies to appellate courts, where the recollection of the individual members of the court might not agree. For a general discussion of the subject, see *Ott v. Boring,* 131 Wis. 472, at p. 486 *et seq.,* 110 N. W. 824, 111 N. W. 833.

By referring to the printed case we discover that the appeal to the circuit court from the assessment of the tax commission challenged the entire additional assessment upon the sum of $99,487. We find that this entire additional assessment was confirmed by the circuit court. By referring to the briefs we find the issues involved on that appeal defined as follows:

1. Under the Wisconsin constitution and the income tax law enacted thereunder, can a taxpayer be assessed an in-

come tax based on the sale by him in 1924 at less than its actual cost of property purchased before 1911, simply because at an intervening date, i. e. January 1, 1911, it had a fair market value of less than its 1924 sales price?

2. As construed by the circuit court, does the Wisconsin income tax law violate the Wisconsin constitution?

3. As construed by the circuit court, does the Wisconsin income tax law violate the United States constitution?

4. What was the fair market value of the entire outstanding capital stock of the Sentinel Company on January 1, 1911?

The questions stated in Nos. 1, 2, and 3 were considered and decided in the opinion. Number 4 was not dealt with in the opinion, although that question was most thoroughly discussed in the briefs. The matter of the market value of the stock on January 1, 1911, was closely contested. The discussion of the value of the stock on January 1, 1911, however, was apropos of the question of whether the sale of the stock revealed a taxable income, if the value of the stock on that date was a legitimate factor, the taxpayer contending for a much higher valuation than was conceded by the State. Nowhere in the briefs is it suggested that any part of the additional assessment was due to the fact that the taxpayer took an excessive deduction. In the opinion there is no discussion of the question of whether an excessive deduction was taken. In order to determine this question it would have been necessary to determine the value of the stock as of January 1, 1911. Although the sale revealed a loss, the amount which the taxpayer might deduct would be limited to that portion of the loss which occurred after January 1, 1911. The opinion indicates that the value of the stock on January 1, 1911, was not considered by the court, and the court made no finding thereon. From that it follows necessarily that the court did not consider whether an additional tax was justified by the fact that the taxpayer had taken an excessive deduction. The only question decided by

the court was that the sale in 1924 for more than the stock was worth on January 1, 1911, furnished no basis for an income tax, and the tax imposed upon that theory was set aside. It is our duty now to give effect to the judgment actually pronounced. That the judgment was not the result of a full and adequate consideration of the case is to be regretted, but there was a time when that error might have been corrected upon the proper motion. While it is not to be inferred that a consideration of the further question involved would have resulted in a different judgment, the court must acknowledge its chagrin in the realization of the fact that its consideration of the case now appears to have been inadequate. This would have been avoided had the attorneys for either side, as was their duty, called attention to the fact that an important question in the case had not received the consideration of the court.

This review of the original record seems conclusive that the only question determined by the court was the validity of that portion of the additional assessment based upon $39,408.96, and that no other part of the additional assessment received the consideration of the court. It follows that the assessment referred to in the mandate was the assessment considered in the opinion, which was the assessment based on the professed gain of $39,408.96 resulting from the sale of the stock. While the rest of the assessment was before us and should have been considered, there is nothing to indicate that its validity was determined. The lower court, therefore, should enter judgment vacating that portion of the additional assessment based upon $39,408.96.

*By the Court.*—A peremptory writ of *mandamus* will issue as prayed.

A motion for a rehearing was denied, without costs, on October 13, 1931.