WILL OF BURNS: DUNN and others, Appellants, vs. LARKIN and others. Respondents.

*January 10—February 7, 1933.*

For the appellants there was a brief by *C. M. La Mar,* guardian *ad litem,* and *Hill & Miller,* all of Baraboo, and oral argument by *Mr. J. H. Hill* and *Mr. La Mar.*

For the respondents there was a brief by *Grotophorst, Quale & Langer* of Baraboo, and oral argument by *Norman M. Quale.*

FRITZ, J.  The appellants, as proponents, petitioned for the admission to probate of a will, and a codicil thereto, executed on March 22, 1921, and April 15, 1921, respectively, by Moses Burns, who died in December, 1930.  Pursuant to an order for a hearing on that petition, due notice was given of the time and place for proving that will and codicil. Objections to the probate of those instruments were filed on the usual grounds of incompetency and undue influence, and also on the ground that said will was not the last will of the deceased, but was revoked by him before his death. On the hearing pursuant to that petition and notice, the contestants relied solely upon the contention that the will of March 22, 1921, and the codicil thereto, was not the last will of Moses Burns because it was revoked by a subsequent will dated December 5, 1921.  Upon contestants' counsel making a statement to that effect at that hearing, proponents' counsel contended that Moses Burns was not of sound mind and not mentally competent to execute a will at the time

he executed the will dated December 5, 1921, and that he was certainly not competent at the time he destroyed that will in April, 1922; and that this contention was made regardless of the contents of that will, and regardless of whether the contents can be proven or not. Thereupon the contest was principally in relation to whether Burns duly and legally executed a will on December 5, 1921, which contained a clause revoking his former will, and whether he was then mentally competent to execute a will and to revoke a former will. In connection with the proof on those issues, and to excuse the production of the alleged will of December 5, 1921, there was proof that the latter instrument had been destroyed by the testator on April 12, 1922; and also proof as to whether he was mentally competent on April 12, 1922, to then revoke a will.

During the trial, in sustaining proponents' objections to certain evidence offered by the contestants, the court said, "You must bear in mind we are concerned with the probate of the will of March and April, 1921;" and thereupon proponents' counsel said, "There is no other petition to probate a will before this court, anyway." Consistent and in accordance with that view as to the nature and scope of judicial inquiry with which it was then concerned, the court, in connection with finding and concluding that the will of December 5, 1921, was duly and legally executed by Burns while mentally competent so to do, and that thereby the former will and codicil executed in March and April, 1921, were revoked and could not be admitted to probate, also concluded that the destruction of the will of December 5, 1921, on about April 12, 1922, "is not for judicial determination of the court; and that the same can be considered only in connection with the admission to probate of the . . . will (of December 5, 1921) by due application and notice therefor."

In reaching those conclusions and ordering the judgment, which was entered accordingly, the court declined to hold, as was requested by the proponents in findings of fact and conclusions of law proposed by them, that Burns had mental capacity to make the will of December 5, 1921; that by executing that will he revoked the former will and codicil, and disposed of his estate in the manner stated in detail in the proposed findings; that Burns was not possessed of sufficient testamentary capacity to revoke his will of December 5, 1921, at the time of his destruction thereof on April 12, 1922; and that the will of December 5, 1921, stands unrevoked and established and should be admitted to probate.

In appealing from the judgment which was entered, the proponents of the will and codicil of March and April, 1921, first assign as error the finding that the testator was competent to execute the will of December 5, 1921, and that the earlier will and codicil were thereby revoked. In view of our conclusions, as hereinafter stated, in relation to proponents' second assignment of error, it is not necessary at this time to pass upon that first assignment of error. The second assignment of error is that the court erred (a) in failing to determine all issues litigated before the court and in concluding the controversy without adjudging that Burns was incompetent on April 12, 1922, to revoke the will of December 5, 1921; (b) in failing to admit that will to probate as the last will, notwithstanding the ineffectual destruction thereof by Burns on April 12, 1922; (c) in failing to establish the contents of that will upon the evidence before the court, or, in failing to order a further hearing for the taking of additional proof to establish the terms of that will.

Technically, in so far as the only petition which had been filed, and the only notice which had been given for proving for admission to probate any will, were concerned, the judi-

cial inquiry and proceedings were confined, in the first instance, to the proving of the will and codicil of March and April, 1921. No other will could be proved for admission to probate until notice of the time and place of proving it had been given as required by sec. 310.04, Stats. However, during the course of the proceedings, which the court was properly entertaining pursuant to the notice which had been given for proving the will and codicil of March and April, 1921, there developed an extraordinary and complicated situation by reason of credible evidence, which was properly admissible on the issues of whether the March and April, 1921, will and codicil constituted the last testamentary disposition of Burns. That evidence proved to the satisfaction of the court that by a will duly executed on December 5, 1921, but destroyed by him on April 12, 1922, Burns had revoked his former will and codicil, and that on December 5, 1921, he still had sufficient testamentary capacity.

The trial of those issues necessitated the consideration of evidence which was introduced by the respective parties as to Burns' conduct and mental condition, in so far as it affected his testamentary capacity, from the time he executed the March, 1921, will until after his destruction, in April, 1922, of the December, 1921, will. Considerable evidence, which admitted of conflicting inferences and findings either way, was received as relevant to the issues which were then necessarily involved in determining whether the March and April, 1921, will and codicil constituted the last testamentary dispositions. The parties probably offered all proof then available to them in support of their respective contentions. That included proof as to the execution, contents, and validity of the December, 1921, will. The range and scope of the evidence introduced was so extensive that, but for the fact that no petition had been filed, and no notice had been given for proving the December, 1921, will (as re-

quired by sec. 310.04, Stats.; and sec. 310.10, Stats., relating to a lost will), the court in furtherance of prompt and speedy judicial administration could, undoubtedly and without injustice, have judicially determined whether the December, 1921, will was duly executed, and was sufficiently established in compliance with sec. 310.10, Stats., and whether it remained unrevoked and should be admitted to probate. Those, in view of facts and circumstances which the court became apprised of by the evidence, were the issues which had to be considered and decided at some time before the ultimate issue of whether Burns died testate or intestate could be judicially determined. That, after all, was the most important issue with which the probate court was concerned. As early a determination of that issue as could possibly be made was necessary in order to enter upon and proceed with the administration and distribution of the estate. That, except for the temporary conservation of the estate under the limited power of a special administrator, could not be done until, because of an adjudication as to whether Burns died testate or intestate, the court could determine whether the estate was to be administered and distributed under and pursuant to the will, or pursuant to the statutes governing the descent and distribution of the property of persons who died intestate.

In addition to dispatch in the ultimate determination of those issues as to testacy or intestacy, the law demands full and unshackled inquiry as to the existence, validity, and establishment of wills and revocations thereof. That inquiry is not a matter of interest or concern solely to those who are the beneficiaries under a will, or the heirs of a testator. We have repeatedly recognized that "in the probate of a will the principal question to be determined is one of status in which the whole world has an interest." *Graef v. Kanouse,* 205 Wis. 597, 238 N. W. 377, 380; *Taylor v. Hoyt,* 207 Wis. 520, 242 N. W. 141. As this court said

in *Will of Dardis,* 135 Wis. 457, 462, 115 N. W. 332, in relation to certain statutory provisions (secs. 346.58, 310.01, 310.02, 310.03, 238.20, Stats.) :

"They evince a clear recognition and declaration of the legislature that there is a public policy involved in the establishment of every legally executed will."

On the other hand, as this court also said in *Will of Dardis, supra:*

"Apart from the interest of the public there is also recognized by the courts an interest and right of the testator to have the directions of his will carried into effect, at least upon some subjects." (Page 463.)

Due furtherance of those interests—private as well as public—demand that if possible there should not be but a partial trial or a piecemeal determination of the issues, which must be decided in order to have a final adjudication as to the status—in point of testacy or intestacy—of an estate of a deceased person. When, as in the case at bar, it becomes apparent to the court, during the course of proceedings which are being conducted pursuant to due notice for the proving of a will, that the real ultimate controversy as to whether an alleged testator died testate or intestate is not being fully tried, and that in order to finally determine that controversy there will have to be a further trial in order to determine whether or not a subsequent, attempted testamentary disposition resulted in the execution of a valid will, which has been sufficiently established, and which has not been revoked, so that it should be admitted to probate, it seems to us that the court should on its own motion suspend the proceedings to permit the filing of a petition and the giving of a notice under sec. 310.04, Stats., of the time and place for hearing proof as to whether or not that later will should be admitted to probate. After that notice has been given, the hearing and trial to be held pursuant thereto can be consolidated with the suspended proceedings, and

the inquiry as to the testacy resumed with due regard to the rights of any new parties who may appear to challenge the former proceedings or evidence taken, by objections, counter-evidence, cross-examination, and otherwise. Although no precedent for such procedure has been cited, and we have been unable, notwithstanding extended search, to find any decision in point, we believe that procedure will be, as Mr. Justice MARSHALL said in *Hocks v. Sprangers,* 113 Wis. 123, 140, 87 N. W. 1101, 89 N. W. 113, "in harmony with the development of judicial administration constantly going on in the application of old principles to new situations, so as to render the administration of justice more certain and efficient to serve the ends for which courts exist."

Law is a progressive science. The application of its principles should be and is constantly extended as the necessities of new conditions and the better administration of the law seem to demand. In furtherance of that policy and that purpose, the legislature enacted sec. 251.09, Stats., which provides that "In any action or proceeding brought to the supreme court by appeal or writ of error, if it shall appear to that court from the record that *the real controversy has not been fully tried,* or that it is probable that justice has for any reason miscarried, ·the supreme court may in its discretion reverse the judgment or order appealed from, . .. . and·may also, in case of reversal, direct the entry of the· proper judgment or remit the case to the trial court for a new trial, and direct the making of such amendments in the pleadings and *the adoption of such procedure* in that court, not inconsistent with the statutes governing legal procedure, as shall be deemed necessary to accomplish the ends of justice."

Under and in accordance ·with that statute, in *Knudson v. George,* 157 Wis. 520, 524, 147 N. W. 1003; *John A. Tolman & Co. v. Infusina,* 170 Wis. 433, 175 N. W. 916; and *Rowell v. Rhadans,* 171 Wis. 86, 90, 175 N. W. 937, causes

were remanded for a new trial or further proceedings for the reason that the real controversy had not been fully tried; and the trial courts were directed to take further evidence, to pass upon undecided issues, and to adopt such procedure as this court directed.

That must be done in the case at bar. Proponents or any other interested party may file a petition for the admission to probate of the will of December 5, 1921, or any other testamentary disposition which may be offered for probate, and, after due notice of the time and place of a hearing has been given under sec. 310.04, Stats., the court should take such additional evidence as may be offered, and otherwise entertain further proceedings, as stated above, to the end that the real controversy herein will be fully tried and determined with finality.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with this opinion. Neither party shall recover costs in this court. Appellants shall pay the fees of the clerk.