WILL OF KALSKOP (also known as KALBSKOPF) : BRUCKNER, Appellant, vs. KALBSKOPF and another, Respondents.

*September 15—December 6, 1938.*

For the appellant there were briefs by *Sell & Mathiowetz,* attorneys, and *Eugene Wengert* of counsel, all of Milwaukee, and oral argument by *Mr. Wengert* and *Mr. Bernard F. Mathiowetz.*

For the respondents there were briefs by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and *W. J. Goldschmidt* of Milwaukee, and oral argument by *Harold M. Wilkie* and *W. E. Torkelson* of Madison.

The following opinion was filed October 11, 1938:

ROSENBERRY, C. J.   At the time of his death the testator was sixty-two years of age.   He had been employed as a structural steelworker.   He was twice married, his first wife having died in 1930, and his second wife on May 3, 1936. He acquired his estate by inheritance from his second wife; she having made an ineffectual disposition of her estate, it came to him under the laws of descent.   He and Robert W. Bruckner, the proponent, were personal friends and had been for some ten years.   On June 17, 1936, the testator had a severe heart attack and was taken to the Milwaukee County Hospital.   In the evening Bruckner called upon him, and it appears from the testimony that he then told Bruckner he was to receive his property.   Bruckner informed the testator that it was necessary to make a writing, whereupon the testator instructed him to procure the execution of the writing. Bruckner thereupon made arrangements with the firm of Sell & Mathiowetz to go to the hospital on the morning of June 18, 1936, and take care of the matter.   On that morning Mr. Sell accompanied by Bruckner went to the hospital where Mr. Sell was introduced to the testator by Bruckner. Mr. Sell then prepared a will which was duly executed by the testator.   By this will, after providing for the payment

of his debts and funeral expenses, the testator gave his entire estate to Bruckner. On the afternoon of June 22, 1936, E. J. Herte, Esq., an attorney at law, went to the hospital at the request of Rev. Carl A. Hoessel. After an interview with the testator Mr. Herte prepared a will which was duly executed by the testator. By the terms of this will the testator, after the payment of his debts and expenses of his funeral, gave $2,000 to St. Paul Lutheran church, and divided the residue of his estate equally between Robert Bruckner and Rev. Carl Hoessel. Apparently the relatives of his second wife, having become aware of the situation, employed Chris. Steinmetz, Esq., an attorney. They gave him instructions for the preparation of a proposed will to be executed by the testator. On the forenoon of June 23, 1936, the relatives and the attorney employed by them attempted to secure the execution of this will by the testator. He steadfastly refused to comply with their wishes. Attorney Steinmetz saw the deceased about 12 o'clock noon, and says that he left feeling that the testator was not competent to make a will, and requested the nurse in charge to advise him and call him if the condition of the testator improved. On the morning of June 23, 1936, Mr. Bruckner also visited the testator at the hospital, and spoke to the testator about the fact that he had made some provision for the church. Testator then informed him that he wished to make such a provision, and asked Bruckner to go to the firm of Sell & Mathiowetz and have it put in his will. Whereupon Mr. Bruckner went to the office of Sell & Mathiowetz and requested them to go to the hospital to see the testator. Thereupon Mr. Mathiowetz revised the will of June 18, 1936, by incorporating therein a provision for a bequest to the church. This will which was propounded as the last will and testament of the testator, gave to St. Paul Lutheran church $2,000, the said sum to be paid to Rev. Carl A. Hoessel or his successor as the minister of said church, and that the receipt of said minister or his

successor as such should be an effectual discharge for the said legacy;—

"and I hereby further provide that this legacy shall be considered in payment of, in whole, or in part, of any debt or obligation that I may now have to said church."

He gave the residue of his estate by this will to Robert W. Bruckner. The will prepared by Mr. Steinmetz had for its basis the attempted disposition made by the deceased wife of the testator of her estate. This paper was not executed so as to constitute a valid will, but in it she indicated how she desired to have her estate distributed.

When the matter came on for hearing upon the objection of the contestant a large amount of testimony was taken respecting the physical and mental condition of the testator and the circumstances surrounding the making of each of the three wills, and his refusal to dispose of his property in accordance with the wishes of his second wife and her relatives.

We have carefully examined and considered all of the testimony offered and received upon the hearing. It appears very clearly that this is a case where the evidence is so evenly balanced that a finding by the trial court must be sustained as not against the great weight and clear preponderance of the evidence whether it be for or against the proponent. There is testimony in the record by Attorney Mathiowetz, Frederick C. Kuetemeyer, and others which the proponent claims the trial court wholly disregarded. The attorneys connected with this transaction are men of excellent reputation and standing at the bar. Mr. Kuetemeyer, one of proponent's witnesses, is a man of unimpeached integrity. The character of the witnesses does not conclude the trial court because the witnesses testify in regard to matters of observation and opinion. The fact that other witnesses do not agree with them indicates a difference of opinion, not a lack of integrity.

After a careful and exhaustive view of the evidence, it is considered that there was presented a question of fact for the determination of the trial court, and that his conclusion cannot be disturbed under the rule. To set out the evidence in detail would serve no useful purpose. The trial court evidently had well in mind the applicable principles of law and were it not for another question raised in the case we should feel impelled to affirm the judgment without opinion under the rule.

It will be noted that the petition was for the probate of the last will executed by the testator, which was executed on June 23d. No petition offering the first or second wills for probate was filed with the court, but in the course of the trial the whole matter relating to all three wills came before the court. When the parties to the proceeding completed their evidence, the trial court indicated its views with respect to the probate of the will of June 23d, and it was also in doubt as to what course it should pursue with reference to the wills of June 18th and June 22d. After considerable argument and colloquy with counsel, the court made an order requiring all of the parties in interest to show cause why the court should not proceed to hear further evidence relating to each of the three wills executed by the testator, and why the court should not make a decision and enter judgment as to the validity or invalidity of each of the wills, and determine whether the deceased died testate or intestate. The court also directed the contestant to file objections to the will of June 18th and the will of June 22d.

The matter came on for hearing on January 15, 1938. Upon this hearing counsel for the proponent argued that they were entitled to take an appeal and have the matter relating to the probate of the will of June 23d determined by a decision of the supreme court before anything further was done. The court thereupon, no further evidence having been offered, held that the three wills were invalid, denied

probate of each of the three wills; and findings of fact, conclusions of law, and the determination of the court were entered in due course. The judgment entered adjudged that the instruments executed by Edward Kalbskopf on June 18, 22, and 23, 1936, were void because of mental incapacity and undue influence, and it is from that judgment that the appeal is taken.

The appeal from the judgment entitles the proponent to a review of the orders complained of. The proponent contends here that the trial court was without jurisdiction to pass upon the validity of the wills of June 18th and June 22d for the reason that the same had not been offered for probate. This contention of the proponent raises an interesting and somewhat troublesome question of procedure. No doubt upon a petition for the probate of a will the only question before the court is the validity or invalidity of the will propounded, but that does not decide the controversy in this case. May the court, where upon the trial it appears that there are other wills, bring all interested parties before it and make a final determination as to the validity of other wills in order to determine whether the testator died testate or intestate? Upon the return day of the order to show cause no contention was made that the whole matter had not been thoroughly and exhaustively tried. Counsel made no claim that they had not had sufficient time to prepare and present any and all evidence available with respect to each of the three wills.

Contestants rely upon the *Will of Burns* (1933), 210 Wis. 499, 246 N. W. 704, to sustain the procedure adopted by the trial court in this case. In that case there was a petition for the probate of a will and codicil executed on March 22, 1921, and April 15, 1921, respectively, the testator having died in December, 1930. The matter was duly brought on for a hearing, objections were filed, and upon the trial the contestants relied solely upon the contention that the will of

March 22d and the codicil thereto was not the last will of Moses Burns because it was revoked by a subsequent will dated December 5, 1921. To meet that contention the proponents contended that Burns was not competent on December 5, 1921, to execute a will, and that he was not competent at the time he destroyed the will of December 5, 1921, in April, 1922. Thereupon the contest related principally to whether or not the will of December 5, 1921, was a valid will for the reason that it contained a clause revoking his former will. The competency of the testator on April 12, 1922, when he destroyed the will of December 5, 1921, was also inquired into. At the close of the trial the court found that the testator was competent when he executed the will of December 5, 1921, and that therefore the will of March 22, 1921, was not his last will and testament, and that it was revoked and could not be admitted to probate, but concluded that the will of December 5, 1921, and the circumstances attending its destruction on April 12, 1922, were not before the court for judicial determination, and that the same can be considered only in connection with the admission to probate of the will of December 5, 1921, by due application and notice therefor. Judgment was entered accordingly, from which proponents appealed. This court said (p. 503):

"The trial of those issues [relating to the will of April, 1922, and the will of December 5, 1921, and its destruction on April 12, 1922] necessitated the consideration of evidence which was introduced by the respective parties as to Burns' conduct and mental condition, in so far as it affected his testamentary capacity, from the time he executed the March, 1921, will until after his destruction, in April, 1922, of the December, 1921, will."

After pointing out that all evidence was before the court and all issues might have been determined, the court said (p. 504):

"Those, in view of facts and circumstances which the court became apprized of by the evidence, were the issues which

had to be considered and decided at some time before the ultimate issue of whether Burns died testate or intestate could be judicially determined. . . . As early a determination of that issue as could possibly be made was necessary in order to enter upon and proceed with the administration and distribution of the estate."

After referring to the private as well as public interest involved, the court said (p. 505):

"Due furtherance of those interests . . . demand that if possible there should not be but a partial trial or a piecemeal determination of the issues, which must be decided in order to have a final adjudication as to the status—in point of testacy or intestacy—of an estate of a deceased person. When, as in the case at bar, it becomes apparent to the court, during the course of proceedings which are being conducted pursuant to due notice for the proving of a will, that the real ultimate controversy as to whether an alleged testator died testate or intestate is not being fully tried, and that in order to finally determine that controversy there will have to be a further trial in order to determine whether or not a subsequent, attempted testamentary disposition resulted in the execution of a valid will, which has been sufficiently established, and which has not been revoked, so that it should be admitted to probate, it seems to us that the court should on its own motion suspend the proceedings to permit the filing of a petition and the giving of a notice under sec. 310.04, Stats., of the time and place for hearing proof as to whether or not that later will should be admitted to probate."

In this case the trial court attempted to follow the procedure there indicated, but it is alleged that in this case it was not necessary in order to pass upon the validity of the will of June 23d, to determine whether or not the wills of June 18th and June 22d were valid. That is true, but the argument overlooks the fundamental consideration which is that it is the duty of the court to determine in proceedings of the character here under consideration whether the testator died testate or intestate in order that the court may promptly proceed with the administration of the estate.

It is considered that in controversies of this kind it is a matter well within the discretion of the trial court to determine how it will proceed. Separate trials which would amount merely to having the evidence offered and received on the first trial again presented to the court might well exhaust a moderate estate. Separate trials certainly could accomplish no useful purpose. It is possible that under some circumstances it might be an abuse of discretion for a trial court to reach out and determine the validity of a prior will where execution was separated by a period of years instead of days. Each case must stand upon its own facts. In this case all of the parties were before the court, all of the evidence bearing upon the mental competency of the testator and his susceptibility to undue influence was before the court; all parties interested were summoned, and they were given an opportunity to present any additional evidence if any there was. None was offered nor was it contended that any such existed. It is considered therefore that the trial court proceeded in accordance with the principles laid down in the *Burns Case*. There is language to be found in opinions cited to our attention relating to the nature of the issue in the probate of wills, but that language was not used in connection with the consideration of questions that are raised in this case, and are therefore not persuasive.

*By the Court.*—The judgment appealed from and orders reviewed are affirmed.

FAIRCHILD, J., dissents.

The following memorandum was filed December 8, 1938:

PER CURIAM (*on motion for rehearing*). Contention is made that the court applied a wrong rule of evidence in this case. That contention cannot be sustained. The question of credibility of witnesses is under all ordinary circumstances

for the trial court. The trial court was obliged to determine that matter and when determined the evidence was such as to establish undue influence by clear and satisfactory evidence. There was no intention on the part of the court to in any way modify the rules respecting the weight of evidence in such cases.

Motion for rehearing is denied with $25 costs.