95 N.J. Super. 182 (1967)
230 A.2d 408
IN THE MATTER OF THE PROBATE OF THE LAST WILL AND TESTAMENT OF MORGAN HAND, II, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued February 6, 1967.
Decided May 19, 1967.
*184 Before Judges GAULKIN, LEWIS and LABRECQUE.
Mr. Marvin D. Perskie argued the cause for appellant Elisabeth J. Hand (Messrs. Perskie & Perskie, attorneys).
Mr. William J. Hughes argued the cause for respondent, Mary G. Hand (Messrs. Loveland, Hughes & Garrett, attorneys; Mr. Robert F. Garrett, III, on the brief with Mr. Hughes).
The opinion of the court was delivered by LEWIS, J.A.D.
Morgan Hand II died January 19, 1966 leaving a last will and testament dated December 23, 1964 which was admitted to probate January 31, 1966. The central issue of this appeal is whether Elisabeth J. Hand, his only child, has standing to contest the will. In it testator named his wife Mary G. Hand (herein plaintiff) as executrix and his daughter (herein defendant) as contingent executrix. He gave his daughter a specific legacy of $10,000 and directed that his residuary estate be paid to his wife, with a provision for payment thereof to the daughter in the event his wife should not survive him.
Defendant filed a complaint in the County Court, Probate Division, demanding that the judgment of probate be set aside and that plaintiff-executrix be required to re-offer the will for probate in solemn form. She claimed (1) the will was not executed in accordance with N.J.S. 3A:3-2 et seq.; (2) pursuant to a compact with plaintiff to make mutual, reciprocal and irrevocable wills, decedent had signed a prior will dated February 16, 1955 and plaintiff had made a similar will, and (3)
"* * * By the terms of said mutual and reciprocal wills, * * * [Elisabeth J. Hand] is the ultimate irrevocable beneficiary of either party taking under either of said mutual wills. The alleged last will and testament of said Morgan Hand II dated December 23, 1964, breaches said compact, and it is contended that said breach was neither intended nor understood to have been effectuated by Morgan Hand II, and that said breach resulted to the detriment of * * * Elisabeth J. Hand." (Emphasis supplied)
*185 The matter was brought on for hearing before the trial court by an order to show cause, at which time the court considered the pleadings, the record before the surrogate, affidavits of plaintiff-executrix and defendant-caveator, and the arguments of counsel. Plaintiff moved to dismiss defendant's complaint, and defendant, by a cross-motion, sought to take depositions and to pursue discovery with respect to the validity of the 1964 will. The trial court found defendant was not an aggrieved person under R.R. 5:3-4(a) or an interested person under R.R. 5:3-4(b) and that she lacked standing to challenge the probate of the 1964 will.
It is undisputed that decedent's 1955 and 1964 wills contain the same plan of testamentary disposition, except that the earlier instrument did not include a specific legacy to Elisabeth; under each will testator's wife, if she survived, was designated sole residuary beneficiary.
Elisabeth's affidavit asserted that her parents executed identical, reciprocal wills under the terms of which she was "the ultimate and irrevocable beneficiary of either party taking under either will." Mary Hand deposed in her affidavit that, "At no time was there any type of a prior agreement, arrangement or understanding as to the disposition of our respective property upon our deaths except as each of us have provided in our wills."
Elisabeth premises her claim of standing to challenge the 1964 will on the following hypothesis: Her father's execution of the 1964 will was a breach of the 1955 agreement with his wife to make mutual wills; the breach of that agreement gives her mother the right to make any will she chooses and, thus, presents the possibility that she (Elisabeth) may not be the ultimate recipient of the estate now valued at approximately one-half million dollars. Elisabeth claims that the 1955 agreement gave her a vested interest which she must now move to protect because her mother refuses to challenge the 1964 will or to seek enforcement of the 1955 agreement.
The trial judge, in determining that defendant was not an aggrieved or interested person within the contemplation of *186 R.R. 5:3-4, declared in his oral opinion, "I see nothing in the record except affirmative admissions as to the validity of the 1955 will. The affidavit of the caveator in Paragraph III admits the validity of the 1955 will, and under the 1955 will she was nothing but a contingent beneficiary." Defense counsel directed the court's attention to the seventh paragraph of Elisabeth's affidavit which reads, "That [1955] will, too, could be held to be invalid," whereupon the trial judge stated:
"It is a legal argument. It is a suggestion that the will could be held invalid. Anything could be. Mere imaginary possibilities could arise, and that is about the degree to which the argument in Paragraph VII rises * * *.
There is nothing factually in the record to support the contention that the 1955 will was a product of any testamentary incapacity, fraud or deceit or undue influence, failure to comply with the proper execution requirements of the will. In fact, * * * the basis upon which this lady comes into court is that she had some type of mutual arrangement entered into between her father and her mother of which she is the beneficiary, and that is the thrust of her argument."
On appeal to this court counsel for defendant urges in his brief that the argument that Elisabeth would receive more under the second will than she would receive under the first "overlooks the contention of the defendant that the first Will was part of a mutually irrevocable compact, enforceable in a court of equity." That argument presupposes the validity of the 1955 will.
Assuming, without deciding, that decedent and his wife did in 1955 execute mutual and irrevocable wills to accord with an agreement supported by a valid consideration, and that the agreement was not terminated by them by mutual consent, the fact remains that even under the 1955 will the entire estate was left to Mary Hand to do with as she pleases during her lifetime. Defendant's remedy is not to prevent the probate of the 1964 will but to seek equitable enforcement of the contract against the estate of her mother by impressing a trust upon the assets. See Gromek v. Gidzela, 36 N.J. Super. 212, 217 (App. Div. 1955); Bank of Bogota v. *187 Hess, 27 N.J. Super. 91, 94 (Ch. Div. 1953); Callahan v. Federal Trust Co., 126 N.J. Eq. 311, 313 (E. & A. 1939); Tooker v. Vreeland, 92 N.J. Eq. 340, 342 (Ch. 1921), affirmed o.b., sub nom. Tooker v. Maple, 93 N.J. Eq. 224 (E. & A. 1921). See also 6 Powell, Real Property (1965), par. 962, p. 474; Annotation, "Joint, mutual, and reciprocal wills," 169 A.L.R. 9, 55-58 (1947); Annotation, "Right of beneficiary to enforce contract between third persons to provide for him by will," 2 A.L.R. 1193, 1200 et seq. (1919), supplemented in 33 A.L.R. 739, 741 (1924) and 73 A.L.R. 1395, 1397 (1931). Hence, the probating vel non of the 1964 will would in no way enhance or diminish defendant's rights or benefits.
On the face of the 1964 will, defendant receives more than under the 1955 will. The assertion that the later instrument breaches the collateral agreement allegedly made by her parents does not provide status for defendant to challenge it. See 5 N.J. Practice (Clapp, Wills and Administration) (3d ed. 1962), § 120, p. 212. It is essential that a contestant demonstrate aggrievement by the judgment of probate. In re Coleman's Will, 27 N.J. Super. 532, 535-536 (App. Div. 1953); In re Myers' Will, 20 N.J. 228, 235 (1955). See also In re Holibaugh's Will, 18 N.J. 229, 232 (1955).
It is urged, however, that the controversy at bar is controlled by In re Lent, 142 N.J. Eq. 21 (E. & A. 1948). There, the appellants were next of kin of Ella M. Lent who died in 1946. The will offered for probate was executed one month before her death and divided her estate into three parts, two parts going to charitable institutions and the third to respondent-executrix, a person not related to testatrix. Under a 1927 will testatrix gave her entire estate to various charities. Appellants filed a caveat to the probate of the 1946 will and the master to whom the matter was referred concluded that appellants had not made out a case and the will should be admitted to probate. On review, the vice-ordinary held that if the will of 1946 were declared invalid the will of 1927 would be effective and, since appellants took nothing *188 thereunder, they had no standing to attack the later will; their appeal was dismissed. That determination was reversed by the Court of Errors and Appeals which held that "in a case of this kind, involving the validity of a will, the next of kin, those who would take an interest in the event of intestacy, do have a standing to attack any and all wills of a decedent." (Id., at p. 22) The court recognized that the 1927 will might also be contested, and noted the argument of appellants that they be given the opportunity of presenting evidence impugning the validity of that instrument. It was ruled, however, that the 1927 will could not have been attacked in the proceedings then pending since the will had not been offered for probate and the parties in interest, the beneficiaries and the executor, were not in court and could not be bound by a decree against their interests, the court saying, "Therefore, it would seem that the only course which the appellants could pursue was to make their attack upon the will offered and if successful then make a further attack upon the earlier will when it was offered, as it would have to be." (Id., at p. 23)
Lent should be read in light of the time of its decision and the facts then under consideration. In the present case those interested in the respective wills are identical and all parties are before the court. A plenary trial and decision nullifying the probate of the 1964 will would not establish intestacy and the controversy would remain unresolved until the validity of the 1955 will was determined.
The objectives of Art. 6, § III, par. 4 of our 1947 Constitution mandate the judiciary to give vitality to the "single controversy" doctrine and to apply it when the ends of justice so require "in any cause so that all matters in controversy between the parties may be completely determined." See, e.g., 2 Schnitzer and Wildstein, New Jersey Rules Service A-IV-933 et seq. (1957); 5 N.J. Practice, op cit., at pp. 212-213, n. 13; Ajamian v. Schlanger, 14 N.J. 483, 485 (1954), certiorari denied 348 U.S. 835, 75 S.Ct. 58, 99 L.Ed. 659 (1954); Curley v. Curley, 37 N.J. Super. 351, 358-360 (App. Div. 1955). Recently, in Falcone v. Middlesex *189 County Med. Soc., 47 N.J. 92, 94 (1966), our Supreme Court noted that "elemental considerations of fairness to the other party and the urgent need for eliminating the delay and wastage incident to the fragmentation of litigation dictated that all of the aspects of the plaintiff's controversy with the defendant be included within his legal proceeding." Cf. In re Irvin's Estate, 19 Misc.2d 41, 186 N.Y.S.2d 500 (Surr. Ct. 1958).
Subsequent to oral argument the court wrote to counsel requesting a clarification of defendant's position, in particular whether she concedes the validity of the 1955 will. In reply to that communication a memorandum of law was filed reasserting the rationale of In re Lent, supra, and citing authorities which we do not find controlling. The memorandum concluded with the statement, "Appellant [Elisabeth Hand] neither admits nor denies the validity of the 1955 will * * *."
There is ample authority for a probate court to determine at one hearing the validity or invalidity of all existing wills of a testator. See 3 Page on Wills (Bowe-Parker Revision 1961), § 2643, p. 95, for the comment:
"* * * In many cases a better understanding of the situation can be had and much time can be saved by determining the validity or invalidity of all of the wills at one hearing. Power of this sort has been held to exist; and the probate court has been upheld in compelling the submission for probate of other wills, in the proceeding which was started originally for the probate of one will."
Accord Lillard v. Tolliver, 154 Tenn. 304, 285 S.W. 576, 578-580 (Sup. Ct. 1926); Jones v. Witherspoon, 182 Tenn. 498, 187 S.W.2d 788 (Sup. Ct. 1945); In re Burns' Will, 210 Wis. 499, 246 N.W. 704 (Sup. Ct. 1933); In re Kalskop's Will, 229 Wis. 356, 281 N.W. 646, 282 N.W. 587, 119 A.L.R. 1094 (Sup. Ct. 1938); In re Yahn's Estate, 258 Wis. 280, 45 N.W.2d 702, 708 (Sup. Ct. 1951); 57 Am. Jur., Wills, § 779, p. 531 (1948). See also 5 N.J. Practice, op. cit., 1965 Pocket Parts, § 120, p. 29, n. 12.
*190 In considering this issue for the first time, the Supreme Court of Wisconsin wrote in the Burns case, supra, relative to the analogous situation of the production of a will drawn subsequent to the one before the trial court in a probate proceeding:
"Due furtherance of * * * interests, private as well as public, demand that if possible there should not be but a partial trial or a piecemeal determination of the issues, which must be decided in order to have a final adjudication as to the status * * * of an estate of a deceased person. When, as in the case at bar, it becomes apparent to the court * * * that the real ultimate controversy * * * is not being fully tried, and that in order to finally determine that controversy there will have to be a further trial * * *, it seems to us that the court should on its own motion suspend the proceedings to permit the filing of a petition * * * as to whether or not that later [or earlier] will should be admitted to probate. After that notice has been given, the hearing and trial to be held pursuant thereto can be consolidated with the suspended proceedings * * *. Although no precedent for such procedure has been cited * * * we believe that procedure will be, as Mr. Justice Marshall said in Hocks v. Sprangers, 113 Wis. 123, 140, 87 N.W. 1101, 89 N.W. 113, 116 [Sup. Ct. 1902], `in harmony with the development of judicial administration constantly going on in the application of old principles to new situations, so as to render the administration of justice more certain and efficient to serve the ends for which courts exist.'" (246 N.W., at p. 706)
There are also cases which hold, where the deceased made more than one will, that it is for the court to say whether either or both were duly executed and which is the controlling testamentary instrument. See In re Covington's Will, 252 N.C. 551, 114 S.E.2d 261, 263 (Sup. Ct. 1960); In re Kennedy's Will, 164 Misc. 796, 299 N.Y.S. 869 (Surr. Ct. 1937); In re Rourke's Will, 133 N.Y.S.2d 735, 739 (Surr. Ct. 1954); In re Lupton's Will, 26 Misc.2d 827, 210 N.Y.S.2d 897 (Surr. Ct. 1960); Lillard v. Tolliver, supra; Durell v. Martin, 172 Tenn. 97, 110 S.W.2d 316, 318 (Sup. Ct. 1937); State ex rel. Shriners' Hospitals for Crippled Children v. Hensley, 385 S.W.2d 820, 827 (Mo. App. 1964); also see 95 C.J.S. Wills § 311a, p. 113 (1957).
*191 In In re Yung's Estate, 216 App. Div. 595, 216 N.Y.S. 112 (App. Div. 1926), the New York court upheld the right of petitioners to have a prior will filed for examination during the pendency of a judicial contest relative to a later will, reasoning that
"* * * `if the prior will on inspection is identical with the contested will and appears to be authentic, and should leave nothing under its terms to the contestants, of the [later] will * * *, then the continuation of an appeal in the contested will matter would be a waste of time, useless, and of no avail. The contestants would not be put to the expense of an appeal, and the proponents would be benefited. The administration of the estate which is now suspended by the appeal would be renewed, real property could be disposed of, and legacies paid which cannot be done while the appeal is pending.'" (216 N.Y.S., at pp. 115-116)
We are constrained, in the circumstances, to remand this matter so that plaintiff-executrix may present the 1955 will for proof as to the validity of its execution. If that will is found to have been validly executed, defendant has no standing to challenge the 1964 will and the probate thereof is affirmed. If it be established that the 1955 will is invalid, defendant must be deemed to be an "aggrieved" party entitled to contest the probate of the 1964 will.
So ordered. No costs or fees are allowed on this appeal.